# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00399-COA

ANTONIO D. SANDERS A/K/A ANTONIO SANDERS         **APPELLANT**

v.

STATE OF MISSISSIPPI         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/20/2014 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MELANIE DOTSON THOMAS |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, ARMED ROBBERY, AND SENTENCED TO TWENTY YEARS, WITH FIFTEEN YEARS TO SERVE AND FIVE YEARS SUSPENDED, AND FIVE YEARS OF POST-RELEASE SUPERVISION; AND COUNT II, FELON IN POSSESSION OF A FIREARM, AND SENTENCED TO FIVE YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED: 04/14/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ROBERTS AND FAIR, JJ.**

**GRIFFIS, P.J., FOR THE COURT**:

¶1. Antonio Sanders was convicted of attempted armed robbery and felon in possession

of a firearm, in violation of Mississippi Code Annotated sections 97-3-79 and 97-37-5, respectively. Sanders filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied. Sanders argues that the trial court erred when it failed to grant the motion for a new trial; he claims that the verdict was against the overwhelming weight of the evidence. We find no error and affirm.

FACTS AND PROCEDURAL HISTORY

¶2. Sanders worked at a Captain D's restaurant in Greenville, Mississippi. On July 29, 2012, Sanders went to the restaurant while several employees were in the process of closing. Sanders was dressed in all black clothing, with dark sunglasses, and a bandana around his face. While brandishing a gun, Sanders ordered the employees, Dominic Bell, Samantha Buckner, and Laura Gilmore, to hand over the money in the restaurant. Sanders did not obtain any money. He eventually walked out of the back of the restaurant after being recognized by the employees.

¶3. Buckner, Bell, and Gilmore all gave statements to the police and identified Sanders as the attempted robber. The employees told police that the perpetrator had a teardrop tattoo on his face similar to Sanders, and they recognized Sanders's voice. The three also gave police a description of the car that left the scene, which matched the car Sanders usually drove. Based on this information, police stopped Sanders and his girlfriend, Lucy Whatley, shortly after the attempted robbery.

¶4. When police stopped the couple, Sanders stated that he and Whatley had just left McDonald's after buying cookies at the drive-through. At the time of the stop, Sanders wore

2

a white t-shirt, colored pajama pants, and red sneakers. Police searched the car, but did not find the black clothing or the handgun used in the Captain D's attempted robbery.

¶5. Subsequently, the State indicted Sanders for attempted robbery and felon in possession of a firearm, with a firearm-enhancement charge. At trial, Buckner, Bell, and Gilmore testified about the attempted robbery. Buckner, Bell, and Gilmore identified Sanders as the perpetrator. Sanders, Whatley, and another Captain D's employee, Cassandra Tidwell, testified on behalf of Sanders.

¶6. Sanders and Whatley testified to Sanders's alibi at the time of the attempted robbery. Tidwell, though she did not witness the attempted robbery, testified that anyone who could manipulate the exit door could enter the restaurant during the time of the closing process. Thus, Tidwell's testimony provided a possible alternative to Sanders being the perpetrator.

¶7. The jury found Sanders guilty of count one, attempted robbery, and count two, felon in possession of a firearm. The jury found Sanders not guilty of the firearm-enhancement charge. After the trial court denied Sanders's post-trial motions, Sanders noticed his appeal.

ANALYSIS

¶8. Sanders argues that the trial court erred when it denied his motion for a new trial. Sanders claims that the verdict was against the overwhelming weight of the evidence.

¶9. "This Court reviews a denial of a motion for a new trial for abuse of discretion." *Conner v. State*, 138 So. 3d 158, 168 (¶33) (Miss. Ct. App. 2013) (citation omitted). When this Court reviews "a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming

weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005) (citation omitted). With this standard in mind, this Court should weigh the evidence in the light most favorable to the verdict. *Id.*

¶10.    Sanders urges this Court to find the evidence weighs against the guilty verdicts. He contends that no physical evidence linked him to either the attempted robbery or the possession-of-a-firearm charge.

¶11.    "A limited amount of physical evidence, in itself, does not mean that a guilty verdict was against the weight of the evidence." *Blanchard v. State*, 55 So. 3d 1074, 1079 (¶25) (Miss. 2011). Further, "the absence of physical evidence does not negate a conviction where there is testimonial evidence." *Williams v. State*, 879 So. 2d 1126, 1128 (¶5) (Miss. Ct. App. 2004) (quoting *Graham v. State*, 812 So. 2d 1150, 1153 (¶9) (Miss. Ct. App. 2002)).

¶12.    The State produced three witnesses of the attempted robbery, and two police officers who investigated the crime. Buckner testified at trial, although she failed to tell police at the scene that when the suspect entered the restaurant, he said "What's up fam," a phrase Sanders frequently used to refer to his coworkers. Further, Buckner testified that she recognized Sanders as the perpetrator by the teardrop tattoo under his eye, his voice, and the car he usually drove, a white car with a dark-colored driver's door, which left the scene shortly after the suspect went out of the back door of the restaurant.

¶13.    Gilmore testified she saw the same car pull out of the adjacent gas station just after the perpetrator left the restaurant, but did not see who was in the car. Gilmore also recognized Sanders's tattoo and his voice. Additionally, Gilmore stated that when she said

4

Sanders's name, he lowered his gun, and walked out the back door.

¶14. Bell testified that she identified the suspect as Sanders due to his tattoo, voice, and car. Bell also testified that Sanders wore the same pants, shoes, and jacket during the attempted robbery that he wore earlier in the day when he came to check his schedule. Bell also said that Sanders had a distinctive walk, which she recognized during the attempted robbery.

¶15. Buckner, Gilmore, and Bell presented evidence that was a similar account of the incident. They also positively identified Sanders as the perpetrator.

¶16. In his defense, both Sanders and Whatley testified that Sanders did not attempt to rob the Captain D's. Sanders and Whatley testified that Sanders dropped Whatley off at a bingo hall around 3 p.m., brought Whatley dinner around 5, and picked up Whatley at 9. From the bingo hall, Sanders and Whatley went to Sanders's mother's house, a friend's house, and a convenience store, then rented a movie and went home to watch the movie and have sex. The couple also testified that around 11 or 11:30, they left their home to go to McDonald's to buy cookies, after which the police stopped the car, and arrested Sanders.

¶17. Sanders, Whatley, and Tidwell all worked at the Captain D's at some point, though none of them worked the night of the incident. All three testified that during the closing routine, the entrance door remained locked, but the exit door could be opened by employees, and, on several occasions, nonemployees. The defense witnesses stated that anyone who could reach a lever above the door could open the door.

¶18. The evidence presented at trial was contradictory. The State presented evidence that established Sanders perpetrated the crime. Sanders offered evidence of an alibi during the

incident. However, "[t]he jury determines the weight and credibility to give witness testimony and other evidence[,]" and is not required to believe alibi testimony. *Moore v. State*, 933 So. 2d 910, 922 (¶43) (Miss. 2006) (citing *Johnson v. State*, 904 So. 2d 162, 167 (Miss. 2005)). The weighing of the lack of physical evidence also falls to the jury. *Id.* at 921 (¶38).

¶19. In *Moore*, the defendant committed aggravated assault, burglary of a dwelling, and rape. *Id.* at 913 (¶1). Although Moore claimed the verdict was against the weight of the evidence, he specifically disputed the evidence of the aggravated-assault and burglary charges due to the lack of physical evidence. *Id.* at 921 (¶37). Moore contended that the State's failure to offer a weapon into evidence meant the weight of the evidence failed to support a guilty verdict on the assault charge. *Id.*

¶20. The Mississippi Supreme Court disagreed and found the verdict was not against the overwhelming weight of the evidence because "[t]he State was not required to produce the actual tool, and the jury was free to consider its absence when weighing the evidence and making its determination." *Id.* at (¶¶38, 39). Moore also disputed the burglary charge because no physical evidence indicated he committed the crime. *Id.* at (¶40). The court found this argument without merit as well based upon other physical and testimonial evidence. *Id.* at (¶41).

¶21. Although the State presented some evidence in *Moore*, such as injuries to the victim resulting from the rape and assault, other cases have allowed for convictions with little or no physical evidence. *Id.*; *see also Blanchard*, 55 So. 3d at 1079 (¶25) (upheld armed-robbery

conviction with limited physical evidence); *Pritchett v. State*, 134 So. 3d 857, 861 (¶¶12-13) (Miss. Ct. App. 2014) (upheld guilty verdict in robbery case with no physical evidence, only eyewitness testimony); *Williams*, 879 So. 2d at 1128 (¶5) (upheld guilty verdict for robbery based on eyewitness testimony alone).

¶22. Based on the evidence presented, we conclude that the trial court did not abuse its discretion in denying Sanders's motion for a new trial. The jury heard the testimony identifying Sanders as the perpetrator, as well as alibi testimony, and weighed the credibility of each witness in its determination of the verdicts. Therefore, we cannot say the evidence weighs against the guilty verdicts. We affirm.

¶23. **THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF COUNT I, ARMED ROBBERY, AND SENTENCE OF TWENTY YEARS, WITH FIFTEEN YEARS TO SERVE AND FIVE YEARS SUSPENDED, AND FIVE YEARS OF POST-RELEASE SUPERVISION; AND COUNT II, FELON IN POSSESSION OF A FIREARM, AND SENTENCE OF FIVE YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**