WALLER, CHIEF JUSTICE,
FOR THE COURT:
¶ 1. Ceasar Johnson was convicted in the Bolivar County Circuit Court for being a felon in possession of a firearm and for the murder of Gregory Johnson. He was sentenced to life in prison. He now appeals the conviction,’ which we affirm,
FACTS AND PROCEDURAL HISTORY
¶2. On November 1, 2012, Gregory Johnson (Greg) was shot and killed while in his vehicle in the parking lot- of J.Y. Trice Apartments in Rosedale, Mississippi. Ceasar Johnson (Ceasar) was indicted for Greg’s murder on August 26, 2013,[1] On April 9, 2015, a jury convicted Ceasar Johnson of being a felon in possession of a *68 firearm and of murdering Greg. The circuit judge sentenced Ceasar to life in prison for the murder charge and to ten years for the felon-in-possession-of-a-firearm charge, with the two sentences to run consecutively. Ceasar filed a Motion for a New Trial on April 20, 2015. The trial court denied the motion on May 4, 2015. Ceasar timely filed his notice of appeal with this Court on June 3, 2015.
¶ 3. Ceasar Johnson asserted two issues on appeal: (1) Because the State’s case rests solely on conjecture and supposition, and because Ceasar presented a reasonable hypothesis consistent with his innocence, the State presented insufficient evidence to convict Ceasar of first-degree murder and being a felon in possession of a firearm; and (2) because the State’s case against Ceasar amounts to nothing more than a hunch, and because Ceasar presented compelling corroborated evidence of a reasonable hypothesis consistent with his innocence, the overwhelming weight of the evidence requires a new trial.
DISCUSSION

A. Sufficiency of the Evidence

¶ 4. When reviewing a challenge to the sufficiency of the evidence, this Court will reverse and render only if the facts and inferences “point in favor of the defendant on any element of the offense with sufficient force that reasonable men could- not have found beyond a reasonable doubt that the defendant was guilty.” Brown v. State, 965 So.2d 1023, 1030 (Miss. 2007) (quoting Bush v. State, 895 So.2d 836, 843 (Miss. 2005)). The evidence will be deemed sufficient if “having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense.” Brown, 965 So.2d at 1030 (quoting Bush, 895 So.2d at 843). This Court also considers the evidence in the light most favorable to the State. Bush, 895 So.2d at 843. The State receives the benefit of all favorable inferences that reasonably may be drawn from the evidence. Wilson v. State, 936 So.2d 357, 363 (Miss. 2006).
¶ 5. The instant case was based on circumstantial evidence since Ceasar did not confess and there were no eyewitnesses to the crime. As a result, the State had the burden to prove Ceasar’s guilt “not only beyond a reasonable doubt, but to the exclusion of every reasonable hypothesis consistent with innocence.” Beasley v. State, 136 So.3d 393, 402 (Miss. 2014) (quoting Leflore v. State, 535 So.2d 68, 70 (Miss. 1988)). However, this Court repeatedly has held that “direct evidence is unnecessary to support a conviction so long as sufficient circumstantial -evidence exists to establish guilt beyond a reasonable doubt.” Underwood v. State, 708 So.2d 18, 35 (Miss. 1998) (quoting Conner v. State, 632 So.2d 1239, 1252 (Miss. 1993)).
¶ 6. Ceasar was convicted pursuant to Mississippi Code Section 97-3-19(l)(a), which defines murder as: “The killing of a human being without the authority of law by any means or in any manner ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being .... ” Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2014). Therefore, the prosecution is required to prove beyond a reasonable doubt that: “(1) the defendant killed the victim; (2) without authority of law; and (3) with deliberate design to effect his death.” Brown v. State, 965 So.2d 1023, 1030 (Miss. 2007).
¶ 7. Ceasar claims that the State failed to exclude every reasonable hypothesis consistent with his innocence, as someone else could have killed Greg. After a review of the State’s evidence, we find that *69 the State presented sufficient evidence to show that Ceasar murdered Greg and that the other hypotheses were not reasonable.
¶8. At trial, the State presented" evidence that Ceasar had planned to rob Greg. Christopher McKenzie, an admitted cocaine addict, testified that, maybe one or two weeks before Greg was murdered, he heard Ceasar speaking with two other men abut robbing Greg. Because Ceasar sold drugs for Greg, the State argued that Cea-sar was looking to move up the supply chain. No evidence was presented to contradict McKenzie’s testimony.
¶9. Devenje Edwards, Ceasar’s girlfriend at that time, testified that Ceasar had sold marijuana. Edwards stated that at the time of the murder, Ceasar was living in Rosewood Apartments with his sister. Rosewood Apartments were approximately two miles from J.Y. Trice Apartments and about half of a mile from the Double Quick. She testified that she was with Ceasar, his father, and his sister the night of November 1, 2012, at the laundromat until she left to go to her grandmother’s house. Ceasar did not tell her where he was going afterward that night.
¶ 10. Kiadric Scott testified that he had seen Greg and Ceasar together at J.Y. Trice apartments. He stated that Greg and Ceasar regularly parked at the J.Y. Trice Apartments. Initially, in his official statement to investigators, he claimed that this was later in the evening, closer to the time of the murder, but at trial, he testified that it was “way before it got dark.” He also claimed that Ceasar was his “homeboy.”
¶ 11. The State’s evidence puts Greg and Ceasar together immediately before the shooting occurred. A Double Quick security videotape placed Ceasar in Greg’s vehicle immediately before the shooting occurred. The video recorded substantial movement between Greg and Ceasar in the vehicle, but no reason for the movement was apparent. Counsel at trial made no issue of: the identity* of Greg or Cea-sar; the fact they were in Greg’s car, in which Greg was later found murdered; or the date and time stamp of the video. The security video showed Greg with Ceasar in the passenger seat of his vehicle, pulling out of a Double Quick parking lot at 10:18 p.m. At 10:26 p.m., or eight minutes later, police informed dispatch that they were responding to a call reporting a murder at the J.Y. Trice Apartments.[2] J.Y. Trice Apartments are approximately one mile from the Double Quick.
¶ 12. Larita Love and her boyfriend Jonathon Smith were the first on the scene of the murder. Smith had arrived at Love’s apartment at the J.Y. Trice Apartments at about 9:40 p.m. Love and Smith had a long-term relationship, and he was the father of her children. From her daughter’s bedroom window, Love saw Greg sitting in his car in the parking lot. She did not see anyone else in the vehicle. Shortly thereafter, she testified that she heard the car spinning off and two to three gunshots, followed by a crash.[3] Greg’s vehicle crashed partially through the exterior wall of their daughter’s bedroom, hitting the bed. Smith retrieved their daughter, who was the only one in the room at the time, from her bed. Panicked, Smith and Love *70 then went outside to investigate. Smith found that the engine was running, the tires were spinning, and Greg was slumped over the wheel. Smith cut off the car’s engine. Love got the children and drove to find some help and located Officer Honorable on the highway a short distance away. Smith went first to the apartment manager’s office, then to a neighbor, Brontavious Cooper, whom hé asked to call 911 and go get help. As Smith was returning to the scene of the accident, Officer Honorable arrived on the scene. Both Love and Smith testified that they did not use their cell phones because they “panicked” and were “scared.”
¶ 13. Though Love testified that Greg was alone in the vehicle, Dr. Erin Barn-hart, the pathologist who performed the autopsy, testified that Greg was shot twice, in the face and head, from the passenger side or from right to left. The first shot was fired from an intermediate range, not directly against the skin but from' a distance of less than three feet. The range of the second shot could not be determined because the victim’s hair surrounded the wound and obscured the pathologist’s view of the skin.
¶ 14. Following the incident, Smith was tested for the presence of gunshot residue on his hands. The right hand was completely clear of any residue, while the back of the left hand was positive. However, the ■laboratory technician testified at trial that the “indicative particle [did] not possess the combination of morphological characteristics and elemental composition necessary to identify it as gunshot residue to the exclusion of all other environmental sources.” Smith and Love both complied with the police investigation and were questioned. Smith testified that'he had not changed his clothes between the time of the incident and his going to the police station for questioning.
¶ 15. Cooper testified that almost a month after Greg’s murder, Ceasar had approached him while he was working at the Double Quick gas station. He testified that Ceasar had questioned him about whether the Drug Enforcement Administration (DEA) had spoken to him and whether he had told the DEA that Ceasar “pulled the trigger,” speaking of Grég’s murder. He also testified that the conversation concerned him and that he felt “kind of shaken up” after the exchange.
¶16. The defense did not present an alternative theory as to how Greg was murdered. Instead, the defense presented testimony from several friends and relatives of the defendant that attempting to show that Ceasar was dropped off at another apartment complex before the murder occurred. Alfreada Hudson, Ceasar’s sister, testified that at 10:00 or 10:18 p.m., Ceasar was at the Rosewood Apartments with ;Greg. She also testified that after Greg dropped off Ceasar, the group, including her, Ceasar, her sister, and her father, headed toward Greenville to go to a casino. However, after they received news about the shooting, they decided to go to Walmart and Wendy’s. Camelisha Thomas, Hudson’s and Ceasar’s sister, corroborated this account. However, no receipts were ever presented in support of this alibi. Lasheba Matthews, a friend of Ceasar’s family, also testified that she had seen Ceasar get out of Greg’s car at Rosewood Apartments. Matthews came forward as a witness thirty-seven days before the trial began." '
 ¶ 17. The time sequence creates an objective factor to test the reliability and credibility of the witnesses’ various accounts. Viewing the evidence in the light most favorable to the State and the jury’s verdict, the short time lapse renders the alleged intervening stop at Rosewood Apartments implausible. “A mere fanciful *71 or farfetched or unreasonable hypothesis is not sufficient to require an acquittal .... ” Cotton v. State, 144 So.3d 137, 140 (Miss. 2014) (quoting Montgomery v. State, 515 So.2d 845, 848 (Miss. 1987)). Additionally, the burden of determining witness credibility is placed on the jury. Jones v. State, 920 So.2d 465, 472 (Miss. 2006). Sufficient evidence existed on which a jury reasonably could have relied to find, beyond a reasonable doubt, that Ceasar murdered Greg. Because: (1) the jury reached this conclusion, (2) Ceasar was an undisputed felon, and (3) Greg died; of gunshot wounds, it is clear that sufficient evidence existed on which a jury could have found that Ceasar was a felon in possession of a firearm. Ceasar’s argument here is without merit.

B. Weight of the Evidence

¶18. This Court will reverse only if the lower court abused its discretion in denying a motion for new trial. Howell v. State, 860 So.2d 704, 764 (Miss. 2003) (citing Edwards v. State, 800 So.2d 454, 464 (Miss. 2001); Sheffield v. State, 749 So.2d 123, 127 (Miss. 1999)). A new trial should be granted on the basis of the weight of the evidence “only in exceptional circumstances, when the evidence weighs heavily against the jury’s verdict.” Wilson v. State, 936 So.2d 357, 363 (Miss. 2006) (citing Bush, 896 So.2d at 846).
¶ 19. Except for Matthews, all Ceasar’s witnesses to the Rosewood stop were family members. Matthews-was a neighbor of one of Ceasar’s sisters and obviously was acquainted with the family. Based on the uncontroverted time stamp from the Double Quick of 10:18 p.m., Hudson’s testimony that she, her sister Thomas, and Cehsar gathered at 10:00 p.m. or 10:18 p.m. prior to leaving for the casino is sequentially impossible. While Love did not see a passenger in Greg’s car when she looked out the window, the testimony of the pathologist would be consistent with the shooter firing the fatal shots while standing outside the front-seat passenger window of the vehicle or sitting in the passenger seat. This fact, the alleged intimidation of Cooper[4] by Ceasar, and the other evidence offered by the State, supports Ceasar’s conviction, and we cannot say that the evidence preponderates heavily against the jury’s decision to convict Ceasar of being a felon in possession of a firearm and of murdering Gregory Johnson. The trial court therefore did not abuse its discretion in denying a new trial.
CONCLUSION
¶20. After a thorough review of the record in. this case, we find that sufficient evidence existed to convict Ceasar Johnson and that the verdict was not against the overwhelming weight of the evidence. Therefore, we affirm the trial court’s judgment.
¶ 21. COUNT I: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE SHALL RUN CONSECUTIVELY TO ANY -AND ALL SENTENCES PREVIOUSLY IMPOSED. COUNT II: CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE *72 SHALL RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I.
RANDOLPH, P.J., LAMAR, MAXWELL AND BEAM, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KITCHENS AND COLEMAN, JJ.

. Ceasar also was indicted on three other counts: 1) possession of a firearm by a convicted felon; 2) witness intimidation' concerning Brontavious Cooper; and 3) witness intimidation concerning Darren Conway. Because neither Cooper nor Conway was present the first day of trial, the court severed the witness-intimidation charges.

. Both Officer Michael Honorable and Investigator Michael Williams testified that they were dispatched at 10:26 p.m. However, after further questioning, Investigator Williams conceded that it could have been 10:31 p.m. The dispatch record conflicts as to whether the call was placed at 10:26 or 10:31 p.m.

. Love testified the shots and crash occurred three to four minutes after she looked out the window. Smith testified it was shortly thereafter.

. Originally the State brought two witness-intimidation charges against Ceasar but each was severed when both witnesses failed to show up on the first day of trial. Cooper eventually did show up at trial and testified, but the witness-intimidation charge already had been severed at that point. '