# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01351-COA

**JAMES LEE BRENT A/K/A JAMES LEE BRENT JR. A/K/A JAMES BRENT A/K/A JAMES L. BRENT**                                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/2016 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KAYLYN HAVRILLA MCCLINTON |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED, RENDERED IN PART, AND REMANDED IN PART - 05/22/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., FAIR AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. A jury sitting before the Madison County Circuit Court found James Lee Brent guilty of armed robbery, kidnapping, and possession of a firearm by a felon. For each conviction, the circuit court sentenced Brent as a violent habitual offender to life in the custody of the Mississippi Department of Corrections without eligibility for parole or early release. We agree with Brent's appointed appellate counsel that there was insufficient evidence to find Brent guilty of possession of a firearm by a felon. We also agree that the doctrine of

retroactive misjoinder entitles Brent to a new trial on the armed robbery and kidnapping charges. Consequently, we reverse the circuit court's judgment, render a verdict of acquittal regarding the felon-in-possession-of-a-firearm charge, and remand the armed robbery and kidnapping charges to the circuit court.

## FACTS AND PROCEDURAL HISTORY

¶2. During the early morning hours of November 12, 2015, Rayshaun Banks was on his third-shift lunch break from a manufacturing plant in Canton, Mississippi, when he stopped at a gas station. According to Banks, as he was adding air to one of his tires, a man later identified as Brent[1] pressed something to the back of his head and demanded his money. Banks said he did not have any money, so Brent ordered Banks to get in the car. With Brent in the passenger seat, Banks drove south on I-55 and took the next exit at Gluckstadt. Banks then drove to a bank ATM to withdraw money. Banks said he needed to get out of the car to remove his wallet, but it was actually a pretense to run to safety and contact authorities.

¶3. Brent drove away in Banks's car, but he was apprehended later that morning in Jackson. He gave a statement and denied that he robbed Banks. According to Brent, Banks had agreed to give him a ride. Brent admitted that while they were in Banks's car, he "put [his] finger behind [Banks's] ear up against [Banks's] head" and told Banks that he was "going to use this car tonight . . . ." But Brent also said that Banks knew he was unarmed because Banks saw his fingers after he moved them away from Banks's head. When asked why Banks said Brent had a gun, Brent opined that Banks was "probably mad."

---

[1] Although Banks did not know Brent's name, Banks said he had seen Brent at work because Brent once worked for a factory that shared space with Banks's employer.

2

¶4. As for why Banks drove to the ATM, Brent said that Banks was going to "get . . . some money so [Banks could] get back to Canton." Despite the implication that Banks was going to let Brent have the car, Brent later admitted that he took it without Banks's permission. He added that he felt "bad about it, because [he knew] it wasn't [his] property."

¶5. Brent was indicted and charged with armed robbery, kidnapping, and possession of a firearm by a felon. At trial, the prosecution called Banks and three law-enforcement officers who were involved in either Banks's report of the events, Brent's arrest, or the subsequent investigation. Brent chose to testify. He essentially reiterated the version of his events from his statement and said that Banks had agreed to give him a ride, he never had a pistol, and Banks bolted from the car for no reason. Brent also claimed that he intended to return Banks's car by leaving it somewhere in Jackson. As discussed above, the jury found him guilty of all three charges. Following his unsuccessful post-trial motion for a judgment notwithstanding the verdict (JNOV) or a new trial, Brent appeals. Additional facts will be discussed below as necessary.

**DISCUSSION**

## I. Possession of a Firearm by a Felon

¶6. Brent argues that there was insufficient evidence to find that he willfully possessed a firearm. He reasons that the trial court should have granted either his motion for a directed verdict or his motion for a JNOV regarding the felon-in-possession-of-a-firearm charge, which was designated as Count III in the indictment. In reviewing this issue, we view "the evidence in the light most favorable to the State." *Johnson v. State*, 224 So. 3d 66, 68 (¶4)

(Miss. 2016). We will uphold the trial judge's decision unless "the facts and inferences point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." *Id*. (internal quotation mark omitted).

¶7. To prove the charge at issue, the prosecution had to present proof beyond a reasonable doubt that Brent had previously been convicted of a felony and he willfully possessed a firearm. *See Body v. State*, 147 So. 3d 890, 892 (¶11) (Miss. Ct. App. 2014). After initial hesitation by Brent's trial counsel, the parties ultimately stipulated that Brent had a prior felony conviction. Thus, this issue hinges on whether there was sufficient evidence that Brent possessed a firearm.

¶8. Banks testified that he "felt like a gun was in the back of [his] head[,]" but he did not "know if it was a pipe or a stick or whatever." He added that whatever he felt against his head, it "didn't feel like a finger." When asked why he took the Gluckstadt exit, Banks answered: "Because [Brent] had a gun on me, and I wanted to do what he said." He later clarified that he did not see a firearm when he was in the car with Brent.

¶9. Arguing that there was sufficient evidence to convict Brent, the State quotes *Sanders v. State*, 162 So. 3d 868, 870 (¶11) (Miss. Ct. App. 2015), for the principle that "the absence of physical evidence does not negate a conviction where there is testimonial evidence." In *Sanders*, the defendant was convicted of attempted armed robbery and possession of a firearm by a felon. *Id*. at 869 (¶1). He was recognized "[w]hile brandishing a gun" as he tried to rob a restaurant where he worked. *Id*. at (¶2). When authorities stopped him, they

4

did not find "the handgun used in the . . . attempted robbery." *Id*. at (¶4). Even so, three witnesses "testified about the attempted robbery." *Id*. at (¶5). One witness testified "that when she said Sanders's name, *he lowered his gun . . . .*" *Id*. at 870 (¶13) (emphasis added). As such, this Court found no merit to Sanders's claim that the guilty verdicts were contrary to the weight of the evidence. *Id*. at 871 (¶22). Brent's case is unlike *Sanders* because there were no witnesses who saw Brent with a firearm.

¶10. The State also relies on *Johnson v. State*, 132 So. 3d 616 (Miss. Ct. App. 2013). The defendant in that case was convicted of possession of a firearm by a felon after at least three people saw him with one. *Id*. at 619-20 (¶¶4, 7). Johnson said that he shot someone in self-defense and he led authorities to the pistol that he used. *Id*. at 619 (¶5). While discussing the propriety of a sentencing enhancement for using or displaying a firearm during the commission of a felony, this Court said that "[i]t cannot be denied that one can *possess* a firearm without *using or displaying* it." *Id*. at 627 (¶38). This Court went on to hold that the circuit court erred by applying the sentence enhancement without allowing the jury "to determine if Johnson had used or displayed the firearm that he possessed in the commission of a felony." *Id*. But *Johnson* does not stand for the principle that a conviction for possession of a firearm by a felon will be upheld without evidence that the accused actually or constructively possessed a firearm.

¶11. Here, there was simply no evidence that Brent possessed a firearm. Banks unequivocally testified that he never saw Brent with one. In the light most favorable to the State, there was evidence that Banks *thought* Brent might have had a pistol. That is, the

evidence was that Brent put something to Banks's head, and Banks complied with Brent's demands because he could not be sure that Brent did not have a pistol. Although such behavior could result in some form of criminal liability,[2] it is insufficient to prove beyond a reasonable doubt that Brent was guilty of Count III. Thus, we reverse the circuit court's judgment regarding that charge and render a judgment in Brent's favor.

## II. Retroactive Misjoinder

¶12. In 2003, the circuit court entered a judgment of conviction after Brent pled guilty to two counts of armed robbery. Two years later, the circuit court entered another judgment of conviction after Brent pled guilty to two counts of perjury. Before jury selection, the prosecution announced that it was willing to stipulate to Brent's status as a felon. Alternatively, the prosecution planned to introduce one of the judgments of conviction; thus, the jury would learn that Brent had previously been convicted of two felonies.

¶13. Anticipating that the prosecution would not be able to present any evidence that Brent possessed a firearm, Brent's trial attorney moved to sever the charges. In other words, Brent's attorney asked the circuit court to try Brent solely for armed robbery and kidnapping at that time, and then try Brent for Count III at a later date. Brent's attorney reasoned that it would be overly prejudicial for the jury to learn that Brent had previously been convicted of a felony when it was unlikely that the prosecution would be able to prove that Brent possessed a firearm.

---

[2] *See Dambrell v. State*, 903 So. 2d 681, 683 (¶6) (Miss. 2005) ("[W]hen a defendant makes an overt act and a reasonable person would believe that a deadly weapon is present, there is no requirement that a victim must actually see the deadly weapon in order to" find the defendant guilty of armed robbery.).

¶14. Like Brent's attorney, the prosecution expected Banks to testify that "he believed he felt a weapon on the back of his head. And he believed [Brent] had the weapon, but [Banks] never saw the weapon . . . ." However, the prosecution argued that it would be "a jury question" regarding whether Banks's testimony would be sufficient to find Brent guilty of Count III. After further discussion, Brent's attorney remained adamant that he would not stipulate to Brent's status as a prior felon. Counsel argued that:

> [i]f the State goes forward with all three counts of the indictment and there's proof of a felony conviction, if there is no gun, there is no jury question. We get a directed verdict, and if we get a directed verdict and the jury has heard about the prior felony conviction, that evidence would be inadmissible in the absence of Count [III] of the indictment.
>
> There are two remedies. One is to allow the State to go forward, put on some proof of a prior conviction, fail to put on proof of a gun, and then give cautionary instructions to the jury that they should ignore the prior felony conviction. Well, once that's out of the box, it's out. The cat's out of the bag. The remedy . . . is to sever [Count III] of the indictment for a separate trial, and our motion is for a severance of that [C]ount away from these other two, that would fix it. That would fix it without the possibility of prejudice to the jury.

The circuit judge ultimately denied Brent's severance motion. Although Brent's attorney initially refused to stipulate that Brent was a prior convicted felon, counsel later changed his mind. During its case-in-chief, the prosecution read a stipulation that Brent had previously been convicted of an unspecified felony.

¶15. Brent now claims that his convictions for armed robbery and kidnapping should be reversed based on the doctrine of "retroactive misjoinder." "[R]etroactive misjoinder 'occurs when a trial or appellate court determines that while joinder of two or more counts against a defendant was initially proper, one or more of those counts should be vacated." *Reynolds*

7

*v. State*, 227 So. 3d 428, 433-34 (¶23) (Miss. Ct. App. 2017) (quoting *Williams v. State*, 37 So. 3d 717, 721 (¶9) (Miss. Ct. App. 2010)). "[A] defendant in such a case is entitled to a new trial on the remaining count(s) if he can show that he suffered clear and compelling prejudice as a result of the evidence introduced to support the vacated count." *Id*. at 434 (¶23) (internal quotation mark omitted). "The strength of the State's case against the defendant on the remaining count[s], the specific evidence presented in connection with the vacated count, and other pertinent details of the defendant's case and trial should be analyzed in determining if the defendant was prejudiced." *Id*. at 434 (¶26).

¶16.     Assuming that Brent was being tried for armed robbery and kidnapping and he would not have chosen to testify, the prosecution would not have been able to introduce evidence of Brent's status as a prior convicted felon.[3] Evidence of Brent's status caused him to suffer clear and compelling prejudice. To prove armed robbery and kidnapping, the prosecution relied nearly entirely on Banks's testimony. Based on the flight instruction, the jury could have derived some degree of probative value from the fact that Brent fled from Officer Mashanna Johnson of the Jackson Police Department when she encountered him. And when Investigator Terence Ware of the Canton Police Department testified, he discussed Brent's statement, which certainly contained practical inconsistencies that could have caused the jury

---

[3] If Brent chose to testify in a hypothetical trial on the armed robbery and kidnapping charges, the prosecution probably would have been allowed to impeach his credibility by cross-examining him regarding his prior perjury convictions. *See* M.R.E. 609; *Hodges v. State*, 743 So. 2d 319, 326 (¶42) (Miss. 1999) ("[T]he jury was also free to consider [the accused's] prior conviction for perjury in weighing the truthfulness of his testimony."); *Fuselier v. State*, 702 So. 2d 388, 394 (¶19) (Miss. 1997) (explaining that a witness may be cross-examined regarding a prior perjury conviction and "the jury should be allowed to make the final determination of the credibility and weight of the witness's testimony").

to doubt Brent's credibility. In his statement, Brent admitted that he put his fingers to Banks's head while they were both in the car, but Brent also said that Banks saw that he was unarmed. Though not to the extent of the case in *Williams*, the prosecution's case against Brent was primarily a "swearing match" between him and Banks, and "the credibility of both individuals was of the utmost importance . . . ." *See Williams*, 37 So. 3d at 727 (¶31).

¶17. Having already stipulated to his status as a previously convicted felon, Brent chose to testify in his defense. During cross-examination, Brent admitted that he had two prior perjury convictions and, as stated by the prosecution, "two other convictions on top of the perjury . . . ." Brent also described himself as a "crackhead" during cross-examination and responded affirmatively when the prosecution asked him if he tried to deceive Officer Johnson during her foot pursuit by claiming that he had just left a home in the vicinity of the chase. Thus, Brent's case was prejudiced to at least some degree by his decision to testify and expose himself to cross-examination on the subjects discussed above, but subsequent events showed that Brent's attorney would have advised Brent not to testify if the jury had not already heard that Brent had previously been convicted of a felony.

¶18. After both sides rested, Brent renewed his motion for a directed verdict related to Count III. The prosecution initially argued against the motion, but later offered to drop Count III and proceed on the armed robbery and kidnapping charges. Brent's attorney responded by moving for a mistrial and arguing that he would have advised Brent not to testify if Brent had not been charged with Count III. More specifically, Brent's attorney argued that if Brent had not been facing the charges in Count III:

9

> It would have altered our defense strategy to the point that I would have recommended that Mr. Brent not testify. The only reason that it became worthwhile for him to testify was because the jury already knew that he was a prior convicted felon, and that never would have been presented to the jury. I moved the Court to sever that charge yesterday. I told the Court yesterday I thought that would have fixed the problem. It would have prevented the situation we're in now. And now that jury has to go back to a jury room with us having stipulated that he was a prior convicted felon, and they never would have heard about it if we hadn't stipulated to it because Mr. Brent would not have testified.

The prosecution countered by withdrawing its motion to drop Count III. Even so, it is clear that but for defense counsel's argument the prosecution would have been willing to drop Count III. Moreover, all parties expected that Banks would testify that he never saw a firearm in Brent's possession, and Banks later testified consistent with that expectation. After careful consideration of the precise circumstances of this case, we conclude that the evidence of Brent's status as a prior convicted felon caused him to experience clear and compelling prejudice to the degree that a new trial is necessary on the armed robbery and kidnapping charges. We remand those charges to the circuit court.

## CONCLUSION

¶19. There was insufficient evidence to find that Brent possessed a firearm, so we reverse the circuit court's judgment on Count III and render a verdict in Brent's favor regarding that charge. We also conclude that the doctrine of retroactive misjoinder necessitates that Brent receive a new trial on the armed robbery and kidnapping charges, so we remand them to the circuit court. We find that our resolution of these two issues makes it unnecessary to discuss the last issue that appellate counsel raises in her brief or the five issues that Brent raises in his pro se supplemental brief.

¶20.    **REVERSED, RENDERED IN PART, AND REMANDED IN PART.**

    **LEE, C.J., IRVING, P.J., BARNES, FAIR, WESTBROOKS AND TINDELL, JJ., CONCUR. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON AND WILSON, JJ.**

    **GRIFFIS, P.J., DISSENTING:**

¶21.    Because I would affirm the conviction under Count III, I respectfully dissent.

¶22.    There was no direct evidence by a witness who saw the gun. However, "the absence of physical evidence does not negate a conviction where there is testimonial evidence." *Sanders v. State*, 162 So. 3d 868, 870 (¶11) (Miss. Ct. App. 2015). Here, Banks testified he felt something like a gun on the back of his head. He said that he believed Brent possessed a gun because it felt hard against his skull. Banks insisted that it did not feel like a finger. "[O]ne can possess a firearm without using or displaying it." *Johnson v. State*, 132 So. 3d 616, 627 (¶38) (Miss. Ct. App. 2013).

¶23.    In my opinion, even though Banks never saw Brent's gun, Banks clearly testified that he thought Brent possessed a gun because Brent pressed something hard, unlike an opposable thumb or finger, against the back of his skull and threatened him. From this testimony, a rational juror could have found the State proved the element of possession. Accordingly, I find that there was sufficient evidence to support the conviction and the trial court did not err when it denied Brent's motion for a directed verdict regarding Count III.

    **CARLTON AND WILSON, JJ., JOIN THIS OPINION.**