# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CT-00690-SCT

*LYNCOYA SHARROD RATCLIFF a/k/a CORY
RATCLIFF a/k/a LYNCOYA SHARRAD
RATCLIFF*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/06/2022 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| TRIAL COURT ATTORNEYS: | ERIC WILLIAM RAY |
| | JAMES LEWIS LANE, JR. |
| | MATTHEW DAVIS SHOEMAKER |
| | BRYAN P. BUCKLEY |
| | EARL LINDSAY CARTER, JR. |
| | CANDANCE L. RICKMAN |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: ZAKIA B. CHAMBERLAIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON HORNE |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 11/14/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. Lyncoya Ratcliff was convicted of possession of a weapon by a felon and possession
of a stolen firearm. He appealed his convictions, and the Court of Appeals affirmed. This
Court then granted Ratcliff's petition for writ of certiorari, which solely challenged his

conviction for possession of a stolen firearm. We find the facts of this case are indistinguishable from ***Barton v. State***, 303 So. 3d 698 (Miss. 2020), and, therefore, we reverse and render Ratcliff's conviction for possession of a stolen firearm.

## FACTS AND PROCEDURAL HISTORY

¶2.     The following facts are taken directly from the opinion of the Court of Appeals:

> [On August 12, 2019], Lyncoya Ratcliff was driving home from a party. He was pulled over by a Hattiesburg police officer for driving with a broken headlight.
>
> Ratcliff told the officer the Escalade he was driving belonged to the passenger. Ratcliff did not have a valid driver's license but explained that he was driving because the passenger was intoxicated.
>
> While the officer was collecting information from Ratcliff and the passenger, another officer arrived as backup. As he approached the vehicle on the passenger side, he heard whispering and saw "several sort of movements" inside the SUV. The first officer then returned to the vehicle, and the other officer told him what he observed.
>
> When asked whether any guns were in the vehicle, Ratcliff and the passenger remained silent. For safety reasons, the officers then asked Ratcliff to step out of the SUV. After the vehicle's door was opened, the officers observed in plain view a small bag of marijuana on the driver's side floor. This discovery prompted a search of the vehicle.
>
> In the pocket behind the passenger seat, an officer discovered a silver .22-caliber revolver with the handle removed. In the back seat, the officers found a black bag that contained two Sig Sauer .45 -caliber magazines and .22-caliber ammunition. The bag also contained prescription drugs and a woman's purse, along with other items such as an I.D. and fake eyelashes. The officers also discovered a black puppy and a bag of dog food.
>
> Ratcliff denied knowledge of the revolver. But he admitted the black bag belonged to him.
>
> The officers conducted a second search. They discovered a Sig Sauer .45-caliber pistol between the passenger seat and the center console. The

2

officers ran the serial number and discovered it was stolen—reported missing from the owner's truck just shy of a month prior. Ratcliff was then placed under arrest.

. . . .

Ratcliff was indicted for possession of a stolen firearm and possession of a weapon by a felon. At trial, the jury heard testimony from the two officers who conducted the stop and viewed their body-cam footage. Ratcliff took the stand in his own defense.

The officer who arrived as backup testified that when he approached the vehicle, he believed that Ratcliff was unaware of his presence. The officer said that he heard the defendant whispering to the passenger, "I've got dope on me." Then he heard Ratcliff repeatedly say "hand me that" while he watched the officer in the rearview mirror.

The officer further testified that after the initial search, he had suspicions another pistol may have been in the vehicle because the magazines found in the bag did not match the revolver found in the backseat. At that point, the officer went back to the Escalade, where he discovered the Sig Sauer .45 between the passenger seat and the center console.

Next, the jury heard from Ratcliff. He testified he had been drinking and visiting with friends at the Pineview apartments prior to the traffic stop. Once the passenger arrived at the apartment, Ratcliff asked if he could put his bag in his SUV. During the party, the passenger and others made several trips to the liquor store in the Escalade.

Ratcliff further testified that he and the passenger left the apartment around 9:00 p.m. They stopped at the liquor store along the way, at which point Ratcliff asked to drive. According to him, he started driving shortly before the officer pulled them over.

On the stand, Ratcliff continued to deny knowledge of any weapons in the SUV, but he did acknowledge ownership of the black bag. He also claimed ownership of the prescription pills and woman's purse found in the backpack, but he testified that he had no knowledge of where the Sig Sauer magazines came from or how they ended up in his bag.

The body-cam footage from the stop was admitted at trial and played for the jury. The jury heard an officer ask Ratcliff and the passenger what they

3

were talking about when he overheard whispering. Ratcliff stated that he was talking to the puppy during that time; however, the footage showed a different version of the story. Despite Ratcliff's testimony, the jury viewed the passenger tell the officers that Ratcliff was referring to the pistol when he said,"[H]and me that, hand me that."

Ratcliff was found guilty of possession of a stolen firearm (Count I) and possession of a weapon by a felon (Count II). He was sentenced to serve five years for Count I and ten years for Count II, with the sentences set to run concurrently. Ratcliff then moved for judgement notwithstanding the verdict. The trial court denied the motion, and the defendant appealed.

*Ratcliff v. State*, No. 2022-KA-00690-COA, 2023 WL 8424500 at *1-2 (Miss. Ct. App. 2023) (third alteration in original). Ratcliff appealed his convictions, and the Court of Appeals affirmed. *Id.* at *5. Ratcliff filed a petition for certiorari review, which this Court granted.

## ISSUE PRESENTED

¶3.     Ratcliff raises a single issue in his petition for certiorari: whether the Court of Appeals erred by finding that sufficient evidence supported his conviction for possession of a stolen firearm.

## STANDARD OF REVIEW

¶4.     This Court reviews challenges to the sufficiency of evidence de novo. *Sanford v. State*, 247 So. 3d 1242, 1244 (Miss. 2018) (citing *Brooks v. State*, 203 So. 3d 1134, 1137 (Miss. 2016)). In doing so, this Court views the evidence in the light most favorable to the State and affirms if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Barton*, 303 So. 3d at 701 (internal quotation marks omitted) (quoting *Thomas v. State*, 277 So. 3d 532, 535 (Miss. 2019)).

4

## DISCUSSION

¶5.     Ratcliff was charged with and convicted of possessing a stolen firearm under Mississippi Code Section 97-37-35(1) (Rev. 2014). Section 97-37-35(1) states that "[i]t is unlawful for any person knowingly or intentionally to possess, receive, retain, acquire or obtain possession or dispose of a stolen firearm or attempt to possess, receive, retain, acquire or obtain possession or dispose of a stolen firearm." "Guilty knowledge is the gist of the offense of receiving stolen property." *Barton*, 303 So. 3d at 701 (citing *Tubwell v. State*, 580 So. 2d 1264, 1266 (Miss. 1991)). "For the State to prove guilty knowledge, it must prove that [the defendant] received the property under circumstances that would lead a reasonable person to believe it was stolen." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Mayers v. State*, 42 So. 3d 33, 37 (Miss. Ct. App. 2010), *overruled on other grounds by Sallie v. State*, 155 So. 3d 760 (Miss. 2015)). "The proof can be circumstantial." *Id.* (citing *McClain v. State*, 625 So. 2d 774, 779 (Miss. 1993)). Crucially, however, "[o]ur courts have long held that for circumstantial evidence to be sufficient evidence, such evidence must exclude every reasonable hypothesis consistent with the defendant's innocence." *Id.* at 703 (citing *Johnson v. State*, 224 So. 3d 66, 68 (Miss. 2016); *Goff v. State*, 14 So. 3d 625, 647 (Miss. 2009); *Pryor v. State*, 239 So. 2d 911, 913 (Miss. 1970); *James v. State*, 45 Miss. 572, 575 (1871)).

¶6.     Ratcliff relies on *Barton*, 303 So. 3d at 703-04, to support his argument that the State was unable to produce sufficient evidence that Ratcliff *knew* the gun was stolen. In *Barton*, this Court reversed Barton's conviction for possession of a stolen weapon, finding that the

State failed to present sufficient evidence of Barton's guilty knowledge. *Id.* at 704. Barton—much like Ratcliff—was a convicted felon in a vehicle stopped by the police, and upon being stopped, he attempted to conceal a gun under the passenger seat. *Id.* at 700. The officers ran the serial number of the gun and determined that it had been reported stolen. *Id.* At trial, the State argued that because Barton attempted to conceal the weapon, he must have known the gun was stolen. *Id.* at 703. Importantly, the State presented no additional significant evidence to support a claim that Barton had knowledge the gun had been stolen nor did it present additional evidence showing it was more likely that Barton hid the gun because he knew it was stolen as opposed to hiding the gun because he was a convicted felon. *Id.* This Court pointed out that "Barton's possession of a firearm as a convicted felon was illegal. It is equally plausible that Barton hid the handgun not because it was stolen but because he was, in fact, a convicted felon. While Barton denied the gun was his, this fact likewise supports both theories equally." *Id.*

¶7.    The *Barton* Court arrived at its conclusion with the guidance of two prior decisions, *Whatley v. State*, 490 So. 2d 1220 (Miss. 1986), and *Rodgers v. State*, 222 Miss. 23, 75 So. 2d 42 (Miss. 1954). In *Rodgers*, 75 So. 2d at 42, Ernest Rodgers was convicted of receiving stolen whiskey. On appeal, this Court overturned Rodgers's conviction, finding that the State failed to present sufficient evidence that Rodgers knew the whiskey was stolen. *Id.* at 44. Whiskey was "an illegal commodity" at the time, so there was as much reason for the jury to believe that the concealment of the whiskey was due to its illegality as it was to its character as stolen property. *Id.* This Court found that both theories possessed equal weight,

"and the jury were not warranted in [that] situation in accepting that theory which pointed to the guilt of [Rodgers] and rejecting the theory which pointed to his innocence." *Id.*

¶8.     In *Whatley*, 490 So. 2d at 1220, Perry Whatley was convicted of receiving a stolen generator. The generator had been stolen out of a truck in a hotel parking lot. *Id.* at 1221. That same evening, Whatley pawned a generator that matched the description of the one that was stolen. *Id.* At trial, Whatley explained how he had acquired the generator in exchange for helping a man change a flat tire. *Id.* at 1221-22. The State relied on circumstantial evidence of Whatley's guilty knowledge, showing that Whatley pawned the generator for much less than its value hours after it was reported stolen. *Id.* at 1223. Again, this Court found that equal weight could be given to several theories: namely, that Whatley had guilty knowledge or that Whatley simply needed to make some quick cash; therefore, his conviction was overturned. *Id.* Whatley testified about how he acquired the generator, and the State produced no direct evidence to contradict Whatley's explanation. *Id.* at 1221-3. Therefore, the State was left with the evidence that Whatley sold the generator for less than its value: evidence that gave equal plausibility to the State's theory of guilt and Whatley's theory of innocence. *Id.* at 1223.

¶9.     The decisions of this Court in *Barton*, *Whatley*, and *Rodgers* demonstrate that when the evidence in a possession-of-stolen-property case in which guilty knowledge is the main disputed element and when equal credence must be given to two theories of a case, one in which the defendant is guilty and another in which the defendant is innocent, a conviction cannot be sustained beyond a reasonable doubt. So what is sufficient evidence of guilty

7

knowledge to reach a jury?  As a baseline, this Court has clearly held that the "unexplained possession of recently stolen property, standing alone, is insufficient to satisfy the guilty knowledge required as an element for the crime of receiving stolen property." *McClain*, 625 So. 2d at 779 (citing *Tubwell*, 580 So. 2d at 1266); *see also* *Sanford v. State*, 155 Miss. 295, 124 So. 353, 353 (1929) ("The unexplained possession of stolen property shortly after the commission of a larceny is a circumstance from which guilt of the larceny may be inferred, but no inference can be drawn therefrom alone that the one in possession of the property received it from another knowing that it had been stolen." (citing *Sartorious v. State*, 24 Miss. 602, 610-11 (1852); *Manning v. State*, 129 Miss. 179, 91 So. 902, 903 (1922))). It follows that some additional indication of guilty knowledge must accompany evidence of unexplained possession of recently stolen property.

¶10.    It is axiomatic that proof of incriminating circumstances under which the defendant received the stolen property is sufficient to reach the jury and sustain a conviction. *See Crowell v. State*, 195 Miss. 427, 15 So. 2d 508, 509 (1943); *Davis v. State*, 586 So. 2d 817, 819-20 (Miss. 1991); *Williams v. State*, 595 So. 2d 1299, 1303 (Miss. 1992); *McClain*, 625 So. 2d at 779. Also, "[w]e have previously held that *concealment* offered as circumstantial evidence in a receiving-stolen-property case may be enough to show guilty knowledge when combined with unexplained possession of recently stolen property." *Barton*, 303 So. 3d at 703 n.2 (citing *McClain*, 625 So. 2d at 781). The word *may* is key here. As we made clear in *Rodgers* and *Barton*, unexplained possession of recently stolen property, coupled with concealment, must still be sufficient under the facts of the case to prove guilty knowledge,

8

and when an equally plausible explanation exists for the concealment, additional evidence probative of guilty knowledge must be presented.

¶11.    Much like Barton, Ratcliff had a previous felony conviction, he was arrested during a traffic stop and there was evidence that he attempted to conceal a stolen weapon. In the instant case, the State managed to present a modicum of evidence more than that presented in *Barton*. Ratcliff's bag contained ammunition matching the stolen weapon, a police report detailing when and from where the weapon was stolen was introduced at trial along with the officers' body-cam footage from the traffic stop. Still, this Court cannot say with legal certainty that this evidence excluded "the equally plausible theory consistent with [Ratcliff]'s innocence on this charge: that he hid the weapon because he was a convicted felon." *Barton*, 303 So. 3d at 704. This is particularly so because the evidence that the State managed to present went to Ratcliff's *possession* of the weapon rather than the *knowledge* that the weapon was stolen.[1]

---

[1]It is worthy to note that the converse is not true. The equally-plausible-theory argument would not apply to the charge of felon in possession of a firearm. This is because proof that the defendant concealed the firearm would, obviously, be evidence that he possessed the weapon. Coupled with evidence of the defendant's prior felony conviction, proof of the crime is complete. This is because knowledge is not at issue.

The opinion from the Court of Appeals in this matter, points out that we did state in *Barton* that proof of when the firearm had been stolen could be significant: "'combined with concealment, such evidence might be sufficient to overcome Barton's alternative theory' that he concealed the firearm 'because he was a convicted felon,' not because he knew it was stolen." *Ratcliff*, 2023 WL 8424500, at *3 (quoting *Barton*, 303 So. 3d at 703). We clarify, however, that if the Court's decision in *Barton* was ambiguous, such evidence must have some relevant connection to the defendant's knowledge that the property was stolen. As Judge Wilson pointed out in his dissent, "standing alone, the mere fact that the gun was stolen weeks before Ratcliff's arrest is insufficient to distinguish *Barton* and likewise insufficient to prove beyond a reasonable doubt that Ratcliff knew that the gun was stolen."

¶12. To be sure, incriminating evidence of how the defendant came into possession of stolen property would be enough to warrant a jury question on the defendant's guilty knowledge. In the absence of such evidence, the State must present something in addition to the unexplained possession of recently stolen property. Further, if the stolen property possesses a nature that makes its possession illegal in and of itself (such as in *Rodgers*) or the possession of the property by a certain individual, i.e., a convicted felon, is illegal (such as in *Barton*), then concealment is not sufficient evidence to tip the scales away from the innocence theory and toward the guilt theory. Something else, circumstantial or otherwise, must accompany evidence of concealment in such a case and that evidence must prove guilty knowledge.[2]

**CONCLUSION**

¶13. We find that the State failed to present sufficient evidence of Ratcliff's guilty knowledge to merit a jury question on the charge of possession of a stolen firearm. The decision of the Court of Appeals and the judgment of the trial court are reversed, and

---

*Id.* at *7 (Wilson, J., dissenting). After all, time is relative.

[2] Herein lies the problem as it relates to defendants who are also previously convicted felons in a possession-of-stolen-firearm case. The issue before this Court deals with Ratcliff's conviction for possession of a stolen firearm pursuant to Mississippi Code Section 97-37-35(1). Under Mississippi Code Section 97-37-35(3)(a) (Rev. 2014), the maximum sentence for that charge for a first offender is five (5) years in prison. Alternatively, a conviction under Section 97-37-5(1) (Rev. 2014) for felon in possession of a firearm carries, pursuant to Mississippi Code Section 97-37-5(2) (Rev. 2014), a maximum sentence of ten (10) years in prison as well as a mandatory minimum of one (1) year in prison. Though not legally binding (and not likely being contemplated by the defendant) this would, theoretically, lend credence to the argument that the convicted-felon status is more of a reason to hide the weapon than its stolen nature.

judgment is rendered in favor of Ratcliff as to his conviction of possession of a stolen firearm.[3]

¶14. **REVERSED AND RENDERED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. RANDOLPH, C.J., NOT PARTICIPATING.**

---

[3]Ratcliff did not raise his conviction for possession of a weapon by a convicted felon before this Court in his petition for certiorari. Therefore, we do not address this issue, and the decision of the Court of Appeals stands as to Ratcliff's conviction on Count II.

11