459 So.2d 293 (1984)
Michael BREWER
v.
STATE of Mississippi.
No. 55140.
Supreme Court of Mississippi.
November 7, 1984.
*294 Thomas J. Lowe, Jr., Burns H. McFarland, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Robert D. Findley, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before BOWLING, HAWKINS and SULLIVAN, JJ.
HAWKINS, Justice, for the Court:
Michael Brewer appeals from his conviction of the crime of kidnapping in the Circuit Court of the Second Judicial District of Jones County and sentence to twenty years in the Department of Corrections.
The issues we address on this appeal are the sufficiency of the indictment, whether the district attorney made fair comment on Brewer's refusal to answer certain questions on the grounds of self-incrimination, and the sufficiency of the evidence. Finding no error, we affirm.

FACTS
In the late afternoon of September 20, 1982, Gary Teel was driving home from work, and picked up Brewer, who was hitchhiking. According to Teel, he drove *295 about 10 miles on Interstate 59 to the second Sandersville Exit, and as he approached the exit, he told Brewer he got off the interstate there. Teel proceeded to testify as follows: Brewer pulled a gun on him and told him to keep driving. Teel continued to drive, under threat of the pistol pointed toward him. When they got into Jasper County, Brewer told him to pull over to the side of the highway. Teel did so, and Brewer held the gun on him, got out of the car on the passenger side, and kneeling, directed Teel to crawl over on the floor board of the passenger side of the car. Teel did so, and saw the opportunity to either push or kick Brewer. Brewer then shot him three times. The pistol jammed, and Brewer whipped him with the pistol, and cut him with a pocketknife. Somehow Teel managed to get loose and start down the highway for help. Brewer drove off in Teel's car.
Some acquaintances saw Teel on the side of the highway, stopped, and, having a short wave radio, radioed the law enforcement officers. A highway patrolman in Lauderdale County arrested Brewer in Teel's car on the interstate in Meridian.
The state was permitted, over the objections of the defense counsel, to relate the events which transpired in Jasper County.
When the state rested, the trial court overruled motions to dismiss and for a mistrial.
Brewer testified in his own defense. He testified that Teel made homosexual advances towards him, and that he did nothing in the way of kidnapping Teel. It was apparently the strategy of defense counsel not to ask Brewer any question about the altercation in Jasper County. In objecting to testimony about the events in Jasper County, counsel had stated to the court that Brewer had been indicted on some charge (not precisely shown in this record) for what transpired in Jasper County, and there had been a hung jury.
Over the objection of defense counsel, on cross-examination the state asked Brewer how he happened to have Teel's car, whether he had shot Teel, what happened when they stopped in Jasper County, and other questions. Brewer refused to answer on the ground his answers might tend to incriminate him, and stated further that they had nothing to do with kidnapping.
The district attorney then asked Brewer if he was telling the truth, and when Brewer answered he was, the district attorney commented, "Except for those parts where you have refused to answer." Objection and motion for a mistrial were made by defense counsel, which were overruled by the court.
We have summarized the cross-examination. All essential parts are set forth as an appendix to this opinion.

LAW
Pertinent portions of the indictment are as follows:
... MICHAEL BREWER on or about the 20th day of September, 1982 in the county and district of aforesaid did unlawfully, wilfully and feloniously, without authority of law, forcibly seize and confine, a human being, GARRY [sic] TEEL, against his will and depriving him of his liberty, and all being against the peace and dignity of the State of Mississippi.
Brewer argues the indictment is fatally defective because it fails to charge unlawful asportation. Brewer was indicted under Section 97-3-53 of Miss. Code Ann. (Supp. 1983), which defines the offense as follows: "Any person who shall without lawful authority forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be secretly confined or imprisoned against his or her will ..."
It is to be noted this indictment tracks the statute in charging a forcible seizure and confinement. Prior to 1980 there were two statutes involving kidnapping, Miss. Code Ann. § 97-3-51, repealed Chapter 394, Laws 1980, and Miss. Code Ann. § 97-3-53, amended Chapter 576, Laws 1974. The pertinent provisions of these two statutes *296 are identical. In Hughes v. State, 401 So.2d 1100, p. 1105 (Miss. 1981), we stated:
... In order to clearly set forth the different elements which may constitute kidnapping under the statute, we restate the statute as follows:
Every person who shall, without lawful authority,
(1) forcibly seize and confine any other,

(2) or shall inveigle or kidnap any other
(3) with intent
(a) to cause such person to be secretly confined or imprisoned in the state against his will,
(b) or to cause such other person to be sent out of this state against his will,
(c) or to cause such other person
(1) to be deprived of his liberty,
(2) or in any way held to service against his will ...
Under the statute the state must prove that a person, without lawful authority, either (1) forcibly seized and confined another person, or (2) inveigled or kidnapped another person, intending to subject such person to either (a), (b) or (c) above. [Emphasis added]
In Wilcher v. State, 448 So.2d 927 (Miss. 1984), the defendant contended there was no showing that he was involved in the crime of kidnapping his victims of murder. We stated: "Manifestly, if they [the victims] had been either physically forced to leave with him, or left at gunpoint, it would have been kidnapping."
The statute does not require any allegation of transportation in the indictment. We therefore hold the indictment was sufficient in charging the crime of kidnapping when it charged Brewer with forcibly seizing and confining Teel against his will and depriving him of his liberty. The evidence supported this charge.
Brewer argues that Aikerson v. State, 274 So.2d 124 (Miss. 1973), compels the inclusion of asportation in the indictment. In Cuevas v. State, 338 So.2d 1236 (Miss. 1976), however, we held that asportation was not a necessary ingredient of the indictment, so long as the indictment charges the victim was imprisoned against his will. This indictment satisfies our holding in Cuevas, because it charges Teel was confined against his will and he was deprived of his liberty.
Moreover, under our holding in Hughes and Wilcher, supra, the indictment and evidence were sufficient.

COMMENT ON BREWER'S REFUSAL TO ANSWER QUESTIONS
The questions asked Brewer on cross-examination dealt with relevant surrounding circumstances of the crime for which he was on trial. Having voluntarily taken the stand as a witness in his own defense, he became subject to cross-examination as to the reason Teel was shot, cut, and why he had Teel's car. Brewer had no right to invoke the 5th Amendment privilege against self-incrimination. See: Sanders v. State, 260 So.2d 466 (Miss. 1972); May v. State, 211 So.2d 845 (Miss. 1968).
Had he been questioned about totally unrelated criminal offenses, the case would be otherwise. See: Hawkins v. State, 228 Miss. 209, 87 So.2d 485 (1956). Even in that case, however, the question would be objectionable on the ground of irrelevance, and not a 5th Amendment guaranty.
When Brewer, without any right to do so, refused to answer relevant questions, it was the prerogative of the state's attorney to make comment about the refusal. Indeed, the trial judge could have quite properly required Brewer to answer these questions.

SUFFICIENCY OF THE EVIDENCE
The jury had before it the testimony of Teel that at gunpoint he was forced to drive his automobile towards some destination unknown to him, and that when he had driven over into another county, stopped the car at the direction of Brewer, and attempted to escape, he was assaulted *297 by pistol and pocket-knife. At gunpoint and as a hostage, he was forced to transport Brewer. Being forced to act under gunpoint manifestly constituted the "forcible seizure," and being required to drive away from his own destination also at gunpoint constituted the "confinement against his will." These facts constitute kidnapping under the statute. See: Ulmer v. State, 406 So.2d 828 (Miss. 1981); Woods v. State, 393 So.2d 1319 (Miss. 1981); and Johnson v. State, 288 So.2d 842 (Miss. 1974).
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.

APPENDIX

BREWER V. STATE  NO. 55,140
MR. CASEY:
Q. Where were you arrested?
A. In Jasper County, the first time.
Q. In Jasper County?
A. I think they said it was Meridian.
Q. Meridian? Okay, and were you driving the car at the time?
A. Yes, sir.
Q. And whose car were you driving?
A. Gary Teel's.
Q. And do you want to tell us how you came to have his car?
MR. McFARLAND:
Objection, your Honor, not relating to the charge of kidnapping.
MR. CASEY:
He is on cross examination, your Honor.
THE COURT:
Overruled, but I again caution the jury that only  that's the only issue that you are to decide is the guilt or innocence of the defendant on the charge of kidnapping.
MR. CASEY:
Q. Would you tell us how you came to have his car?
A. I refuse to answer that on the grounds that it may tend to incriminate me.
Q. Did you shoot Mr. Teel?
A. No, sir.
Q. Did you cut Mr. Teel?
A. Yes, I cut Mr. Teel.
* * * * * *
MR. CASEY:
Q. Do you own a gun?
A. No, sir.
Q. Have you ever owned a gun?
A. A shot gun and rifle, but I have never had a pistol.
Q. Have you ever had  have you ever seen that pistol before?
A. That's the one they said that was out there at the scene?
Q. That's the one they said was out there at the scene, and do you know how it got there?
A. No, I didn't have a gun.
Q. What?
A. I didn't have a gun.
* * * * * *
MR. CASEY:
Q. You don't know where this gun came from?
A. It is the one Mr. Teel had.
Q. Did Mr. Teel shoot himself?
MR. McFARLAND:
We object, your Honor.
THE COURT:
Overruled.
* * * * * *
MR. CASEY:
Q. Would you answer the question?
A. I refuse to answer that on the grounds in [sic] may tend to incriminate me.
It is not with the kidnapping. I have been advised just to answer questions pertaining to the kidnapping.
* * * * * *
MR. CASEY:

*298 Q. Mr. Brewer, where did you say Mr. Teel stopped when you were in the car?
A. As far as I know, it was Jasper County.
Q. All right, and once he stopped, what happened after that?
A. I refuse to answer that on the grounds in [sic] may tend to incriminate me.
* * * * * *
MR. CASEY:
Q. You are not denying that you drove Mr. Teel's car, are you?
A. No, sir.
* * * * * *
MR. CASEY:
Q. Do you know how Mr. Teel got some bullet holes in him?
A. Yes.
Q. You do know how he got some bullet holes in him? How did he get bullet holes in him?
A. I have been advised not to answer anything that don't pertain to the kidnapping.
* * * * * *
MR. CASEY:
Q. Did you cut Mr. Teel's throat?
A. I refuse to answer that on the ground in [sic] may tend to incriminate me.
Q. Well, you made a statement a few minutes ago that you did cut him.
A. I would have to go through all of the things that led up to that, and that don't pertain to this.
Q. That is up to the Judge to decide and not for you to decide.
MR. McFARLAND:
Objection, your Honor, he is arguing with the witness.
THE COURT:
Overruled.
MR. CASEY:
Q. You stated before that you cut Mr. Teel, and I am asking you did you cut his throat?
A. At the time I cut Mr. Teel, I thought I had been shot in the mouth, and he was about to choke me to death inside the car.
Q. Is this the knife you used to cut Mr. Teel with?
A. Yes, sir, this is my knife.
Q. Is that the one you cut Mr. Teel with?
A. Yes.
Q. It is?
A. Yes.
* * * * * *
MR. CASEY:
Q. Mr. Brewer, you told the jury that you didn't kidnap Mr. Teel, didn't you?
A. No, I didn't kidnap him.
Q. How did you get his car then? If you didn't kidnap him, how did you get his car?
MR. McFARLAND:
Objection, the question has been previously asked and answered.
THE COURT:
Overruled.
MR. CASEY:
Q. You may answer that.
A. I need a few minutes to talk to my attorney.
MR. CASEY:
Your Honor, we are going to object to him talking to his lawyer. He has had plenty of time to talk to his lawyer.
A. I refuse to answer that on the grounds in [sic] may tend to incriminate me.
MR. McFARLAND:
If it please the Court, I would like a ruling as to his request.
THE COURT:
Yes, you may confer with your counsel. I will give you one more chance to confer with your counsel, but we are not going to interrupt examination any more for that purpose.
MR. McFARLAND:

*299 May we step into this room here?
THE COURT:
Yes, sir.
(WHEREUPON THE DEFENDANT AND HIS COUNSEL, MR. McFARLAND, DEPARTED THE COURTROOM FOR A FEW MOMENTS, FOLLOWING WHICH TIME THE WITNESS RESUMED THE WITNESS STAND)
THE COURT:
All right, you may proceed.
MR. CASEY:
Q. Mr. Brewer, did Mr. Teel let you have that car?
A. I was in the car at the time I was arrested.
Q. I know you were in the car at the time you were arrested, but what I am interested in is how you got the car from Mr. Teel.
A. I refuse to answer that on the ground that it may tend to incriminate me.
Q. You admit that you cut him, but you won't tell me how you got the car; is that what you are saying?
A. I refuse to answer that on the grounds 
Q.  and you didn't shoot him, either, did you?
A. No, I didn't shoot him.
Q. And you don't know where the gun came from either, do you?
A. I refuse to answer that on the ground it might incriminate me.
Q. Are you telling the truth?
A. Yes.
Q. Are you telling all the truth?
A. Yes, sir.
Q. Except for those parts where you have refused to answer.
MR. McFARLAND:
Objection, your Honor, and at this point we move for a mistrial, that being a comment of counsel with reference to the defendant's taking of the fifth on a particular subject, and I believe that comment is grounds for a mistrial.
THE COURT:
Overruled.
MR. CASEY:
Q. You may answer that. You have told the truth except for those parts which you have refused to comment upon; is that correct?
A. The reason I refuse to comment on those is it don't pertain to the kidnapping.
Q. It does not what?
A. It does not have anything to do with the kidnapping and has to do with other charges.
Q. Well, I will disagree with you on that, but I will not argue the point of law with you, but I am asking you particular questions and if you did something to get Mr. Teel's car away from him? You did, didn't you?
THE COURT:
I will sustain further questioning on that point.
I will sustain an objection to further questioning on that point.
MR. CASEY:
No further questions.
REDIRECT EXAMINATION
MR. McFARLAND:
Q. Michael, is this your gun?
A. No, sir, it's not my gun.
Q. Did you buy that gun?
A. No, sir.
Q. Did you steal it?
A. No, sir.
Q. Did anybody give it to you?
A. No, sir.
Q. I will ask you one more time if you kidnapped Gary Teel?
A. No, sir. I have never kidnapped him; I have never even thought about it.
MR. McFARLAND:
Thank you. You may step down.
[Record, pp. 114-125]