# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-KA-00095-SCT

*JAMES LEE BRENT a/k/a JAMES LEE BRENT,*
*JR. a/k/a JAMES BRENT a/k/a JAMES L. BRENT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/18/2018 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF, III |
| TRIAL COURT ATTORNEYS: | ASHLEY ALLEN |
| | TOMMY MAYFIELD |
| | BENTLEY E. CONNER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: ERIN E. BRIGGS |
| | GEORGE T. HOLMES |
| | JAMES L. BRENT (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/13/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. Following James Lee Brent's retrial on December 4, 2018, a Madison County jury convicted him of armed robbery and kidnapping, and he was sentenced to serve two concurrent life sentences as a violent habitual offender under Mississippi Code Section 99-19-83 (Rev. 2015). Aggrieved, Brent appealed to this Court. Brent's appellate counsel filed

a brief with this Court according to ***Lindsey v. State***, 939 So. 2d 743 (Miss. 2005), certifying that no arguable issues exist in the record.

¶2.     Brent filed a supplemental pro se brief raising four issues.  First, Brent argues that the evidence was insufficient to support each of his convictions.  Second, Brent claims that his retrial subjected him to double jeopardy.   Next, Brent claims that a jury instruction effectively modified an essential element of armed robbery.  Lastly, Brent claims that the State's evidence was insufficient to prove his status as a violent habitual offender under Section 99-19-83.

¶3.     After review, we find that Brent presents no arguable issues.  Furthermore, this Court finds no other arguable issues after carefully reviewing the record.  Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶4.     Rayshaun Banks worked the third-shift[1] as a forklift operator at a factory in Canton, Mississippi.  At approximately 3:00 a.m. on November 12, 2015, Banks took his lunch break and walked outside to his 2008 Chrysler Sebring sedan.  Upon reaching his car, Banks noticed that his driver-side rear tire was low and decided to drive to the Shell gas station in Canton to add air to it.

¶5.     After getting some quarters from inside the gas station, Banks bent down and began adding air to the tire.  A man approached Banks from behind, undetected, and pressed something "[l]ike the barrel of a gun" against the back of Banks's head.  The man, later identified as James Brent, demanded that Banks "give me your money" and threatened to

---

[1] Banks described the third-shift hours as 11:00 p.m. to 7:00 a.m.

2

shoot Banks. Banks did not see a gun, but he explained that it felt "[l]ike a barrel of a gun" was pressed against the back of his head. Banks told Brent that he did not have any money. Brent then ordered Banks into the driver seat and told Banks to drive Brent to Jackson. Banks complied with Brent's orders because Banks thought Brent had a gun. Banks explained that he feared for his life and believed that Brent was going to shoot him.

¶6.     As the two were headed south on I–55 toward Jackson, Banks told Brent that he could get Brent some money out of the bank. Brent then told Banks to take the Gluckstadt exit and go to an ATM. Banks complied. After pulling up to an ATM, Banks explained to Brent that Banks needed to step out of the car to retrieve his wallet. When Banks stepped out of his car, he immediately ran to a nearby Sonic restaurant and told the Sonic employees to call the police. Banks then noticed a sheriff's deputy at the Exxon nearby and ran to the deputy for help. At the same time, Brent was spotted driving past the Exxon in Banks's car. Banks then was taken to the Canton Police Department and provided a statement about what happened.

¶7.     Later that same morning, Investigator Terence Ware with the Canton Police Department contacted Banks and asked for Banks to come to the department and speak with him. While Banks was explaining to Investigator Ware what happened, Investigator Ware received a call from the Jackson Police Department stating that they had Brent and Banks's car in custody.

¶8.     After Brent had signed an acknowledgment and waiver of his *Miranda*[2] rights, Investigator Ware interviewed Brent that afternoon. Brent admitted that he took Banks's car

---

[2] *See **Miranda v. Arizona**, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

without permission, but he denied ever having a gun. Instead, Brent claimed that he had placed two fingers behind Banks's head to imitate a gun; Brent demonstrated this to Investigator Ware. When asked why Banks ran and left Brent sitting in the car at the ATM, Brent responded that he guessed Banks got frightened. Neither Canton police nor Jackson police ever recovered a gun.

¶9.     On February 17, 2016, a Madison County grand jury returned a three-count indictment against Brent as a violent habitual offender under Mississippi Code Section 99-19-83 (Rev. 2015). Brent was charged with one count of armed robbery in violation of Section 97-3-79 (Rev. 2014), one count of kidnapping in violation of Section 97-3-53 (Rev. 2014) and one count of possession of a firearm by a convicted felon in violation of Section 97-37-5 (Rev. 2014).

¶10.     Following Brent's initial trial, a Madison County jury convicted Brent on all three counts, and the circuit court sentenced Brent to life in the custody of the Mississippi Department of Corrections as a violent habitual offender. Brent appealed, and the case was assigned to the Court of Appeals. *Brent v. State*, 247 So. 3d 367 (Miss. Ct. App. 2018). The Court of Appeals determined that "[t]here was insufficient evidence to find that Brent possessed a firearm" for purposes of Section 97-37-5. *Id.* at 373. Therefore, the Court of Appeals reversed and rendered Brent's felon-in-possession-of-a-firearm conviction. *Id.* The Court of Appeals "also conclude[d] that the doctrine of retroactive misjoinder necessitate[d] that Brent receive a new trial on the armed robbery and kidnapping charges . . . ." *Id.* As a result, the Court of Appeals reversed and remanded Brent's armed-robbery and kidnapping

4

convictions for a new trial. *Id.*

¶11. This appeal follows Brent's December 4, 2018 retrial in the Madison County Circuit Court. A second Madison County jury found Brent guilt of armed robbery and kidnapping. On December 17, 2018, the circuit court sentenced Brent as a violent habitual offender to life in the custody of the Mississippi Department of Corrections without the possibility of parole for each of Brent's convictions. Following the denial of his motion for a new trial, Brent appealed to this Court.

¶12. Brent's appellate counsel filed a *Lindsey* brief with this Court, certifying that there are no arguable issues supporting Brent's appeal. *See Lindsey*, 939 So. 2d at 748 (delineating the "procedure to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal [.]").[3] We find that Brent's appellate counsel has complied with all the *Lindsey* requirements. Counsel certifies that she "diligently searched the procedural and factual

---

[3] According to this Court's decision in *Lindsey*, appellate counsel must file a brief certifying the following:

> that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record throughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding the arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

*Lindsey*, 939 So. 2d at 748. Appellate counsel then must "send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief." *Id.* (citing *Turner v. State*, 818 So. 2d 1186, 1189 (Miss. 2001), *overruled on other grounds by Lindsey*, 939 So. 2d at 748).

history of this criminal action and scoured the record," finding no arguable issues for appeal. Additionally, counsel confirms that she provided Brent with a copy of the brief, informed Brent that she found no arguable issues and informed Brent that he had the right to file a pro se brief. Brent filed a pro se brief raising four issues. The State concurs with appellate counsel's conclusion that there are no arguable issues in the record. For the same reason, the State contends that Brent's pro se arguments are devoid of merit.

**ANALYSIS**

¶13. Brent asserts four arguments in his pro se brief: (1) the State's evidence was insufficient to prove all the essential elements of armed robbery and kidnapping; (2) his retrial for armed robbery and kidnapping subjected him to double jeopardy; (3) jury instruction S–4 constructively amended the indictment; and (4) the State failed to prove his status as a violent habitual offender.

**I.      Whether the evidence was sufficient to support Brent's convictions.**

¶14. Brent makes two distinct arguments regarding the sufficiency of the evidence. Brent first argues that the State's evidence supporting his armed-robbery conviction was insufficient to prove beyond a reasonable doubt that he exhibited a deadly weapon. Next, Brent argues that the State's evidence supporting his kidnapping conviction was insufficient to prove beyond a reasonable doubt that he forcibly seized Banks.

¶15. On appeal, issues regarding the sufficiency of the evidence are reviewed de novo. *Green v. State*, 269 So. 3d 75, 79 (Miss. 2018) (citing *Brooks v. State*, 202 So. 3d 1134, 1137 (Miss. 2016)). When assessing the sufficiency of the evidence, this Court "must view

6

the evidence in the light most favorable to the State and ask whether any rational juror could have found that the State had proven, beyond a reasonable doubt, each element of the crime charged." *Graham v. State*, 185 So. 3d 992, 1003 (Miss. 2016) (citing *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005), *abrogated on other grounds by Little v. State*, 233 So. 3d 288, 289 (Miss. 2017)). "Under this inquiry, all evidence supporting the guilty verdict is accepted as true, and the State must be given the benefit of all reasonable inferences that can be drawn from the evidence." *Green*, 269 So. 3d at 79 (internal quotation marks omitted) (quoting *Galloway v. State*, 122 So. 3d 614, 665 (Miss. 2013)). This Court "should reverse only where, with respect to one or more elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Id.* (internal quotation marks omitted) (quoting *Boyd v. State*, 977 So. 2d 329, 337 (Miss. 2008)).

### A. Armed Robbery

¶16. Brent contends that the State failed to prove beyond a reasonable doubt that he used or exhibited a deadly weapon. Conversely, the State argues that Banks's testimony is sufficient to support the jury's guilty verdict under this Court's holding in *Dambrell v. State*, 903 So. 2d 681 (Miss. 2005). We agree with the State.

> The elements of armed robbery are: (1) a felonious taking or attempt to take; (2) from the person or from the presence; (3) the personal property of another; (4) against his will; (5) by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon.

*Cowart v. State*, 178 So. 3d 651, 666 (Miss. 2015) (citing Miss. Code Ann. § 97–3–79 (Rev. 2014)).

7

¶17.    In ***Dambrell***, we held that for purposes of armed robbery, when "a defendant makes an overt act, a victim does not have to actually see a deadly weapon.  So long as the victim reasonably believes that the defendant had a deadly weapon and the defendant makes an overt act the statute is satisfied." ***Dambrell***, 903 So. 2d at 689.  Applying ***Dambrell***, the Mississippi Court of Appeals has affirmed several armed-robbery convictions in which the defendant had indicated that he had a gun but the victim never actually saw the weapon. *See* ***Chilton v. State***, 245 So. 3d 525, 530–34 (Miss. Ct. App. 2017), *cert. denied*, 246 So. 3d 883 (Miss. 2018); ***Trammell v. State***, 62 So. 3d 424, 428–30 (Miss. Ct. App. 2011); ***Lyons v. State***, 942 So. 2d 247, 250–51 (Miss. Ct. App. 2006), *cert. denied*, 957 So. 2d 1004 (Miss. 2007).

¶18.    Here, the victim, Banks, testified that he never saw a gun.  Banks, however, testified that Brent approached him from behind and pressed something hard "like the barrel of a gun" against the back of Banks's head.  Banks stated that Brent demanded money and threatened to shoot him.  Banks explained that he was in fear for his life because he thought that Brent had a gun and was going to shoot him.

¶19.    Viewing this testimony in the light most favorable to the State, a reasonable juror could have found that the State proved beyond a reasonable doubt that Brent exhibited a deadly weapon.  Thus, this issue is without merit.

> B.     *Kidnapping*

¶20.    For the jury to convict Brent of kidnapping, the State was required to prove beyond a reasonable doubt that Brent (1) acted without lawful authority, and (2) with or without the

intent to confine secretly, (3) forcibly seized and confined Banks. Miss. Code. Ann. § 97-3-53 (Rev. 2014). Brent contends that because the State failed to prove beyond a reasonable doubt that he exhibited a deadly weapon, the State also failed to prove beyond a reasonable doubt that he forcibly seized Banks. Thus, according to Brent, the State failed to prove all the essential elements of kidnapping beyond a reasonable doubt. We disagree.

¶21. This Court has held that being forced to act under gunpoint constitutes a forcible seizure and that being forced at gunpoint to drive someone to an unknown destination constitutes being confined against one's will for purposes of kidnapping. *Brewer v. State*, 459 So. 2d 293, 296–97 (Miss. 1984). Here, Banks testified that he believed that he was being held at gunpoint. Banks also testified that after Brent demanded money and threatened to shoot him, Brent ordered Banks into the car and told Banks to drive Brent to an unknown destination in Jackson. Banks stated that Brent continued to press what Banks believed to be a gun against the back of his head while Banks was forced to drive Brent towards Jackson. Banks explained that he complied with Brent's orders because he thought that Brent had a gun. This testimony, when viewed in the light most favorable to the State, was sufficient for a reasonable juror to find that Brent forcibly seized Banks. Therefore, this issue lacks merit.

¶22. Brent also argues that the movement and confinement of Banks was merely incidental to the armed robbery. We disagree.

¶23. This Court recently rejected this same argument in *Green*, 269 So. 3d at 79–82. In *Green*, the defendant was convicted of kidnapping and attempted murder. *Id.* at 77. On appeal, the defendant argued that "any kidnapping was incidental" to the attempted murder.

9

*Id.* at 79–80. The evidence presented at trial showed that the defendant had forcibly removed his wife from a bedroom and had dragged her down a hallway into the living room. *Id.* 81–82. There, the defendant began to repeatedly strike his wife on the top of her head with a machete. *Id.* at 82. This Court found that the "evidence demonstrat[ed] that the kidnapping was a separate, independent crime." *Id.* at 80. Thus, the Court affirmed both of the defendant's convictions. *Id.* at 83.

¶24. Here, the jury heard testimony that Brent forced Banks into the car and forced Banks to drive Brent from Canton toward Jackson. Banks explained that this occurred after Brent had already demanded money from Banks but before Brent ordered Banks to get off at the Gluckstadt exit and go to an ATM. Brent's actions of forcibly seizing Banks and ordering Banks to drive him to Jackson were separate and independent from the armed robbery. Accordingly, this issue lacks merit.

## II. Whether Brent's retrial subjected him to double jeopardy.

¶25. Brent argues that his retrial for armed robbery and kidnapping violated the constitutional prohibition against double jeopardy. Brent claims that he is entitled to an acquittal because the Mississippi Court of Appeals reversed and remanded his original armed-robbery and kidnapping convictions.

¶26. Brent's original armed-robbery and kidnapping convictions were reversed, not because the Court of Appeals found the evidence supporting those convictions to be legally insufficient, but because "the doctrine of retroactive misjoinder necessitate[d] that Brent receive a new trial." *Brent*, 247 So. 3d at 373. After determining that Brent's felon-in-

possession-of-a-firearm conviction was not supported by sufficient evidence, the Court of Appeals reversed that conviction and rendered a verdict on that charge in Brent's favor. *Id.* The Court of Appeals also found that Brent suffered clear and compelling prejudice from the State's evidence introduced to support the felon-in-possession-of-a-firearm charge. *Id.* As a result, the Court of Appeals reversed and remanded Brent's armed-robbery and kidnapping convictions for a new trial. *Id.*

¶27. This Court reviews double-jeopardy claims de novo. *Stewart v. State*, 131 So. 3d 569, 574 (Miss. 2014) (citing *Rowland v. State*, 98 So. 3d 1032, 1037 (Miss. 2012), *overruled on other grounds by Carson v. State*, 212 So. 3d 22, 32–34 (Miss. 2016)). The double jeopardy clause of the Mississippi Constitution provides that "[n]o person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution." Miss. Const. art. 3, § 22. Accordingly, this Court has held that "there must be an actual conviction or acquittal on the merits to support the plea of former jeopardy." *Smith v. State*, 198 So. 2d 220, 223 (Miss. 1967) (citing *Harris v. State*, 158 Miss. 439, 130 So. 697 (1930); *Lovern v. State*, 140 Miss. 635, 105 So. 759 (1925); *Conwill v. State*, 125 Miss. 716, 86 So. 876 (1920)).

¶28. Here, Brent has not received an actual acquittal on the merits of either conviction currently before this Court. Nor have either of Brent's convictions been upheld on appeal. Therefore, Brent's retrial on the armed-robbery and kidnapping charges did not subject him to double jeopardy. This issue is without merit.

11

### III. Whether jury instruction S–4 constructively amended Brent's indictment.

¶29. Brent argues that the trial court committed plain error by giving jury instruction S–4. Jury instruction S–4 provided that,

> [w]hen a defendant makes an overt act and a reasonable person would believe that a deadly weapon is present, there is no requirement that a victim must actually see the deadly weapon in order to convict. A victim is not required to have definite knowledge of a deadly weapon in the sense that the weapon must actually be seen by the victim's own eyes.

Brent maintains that this instruction constructively amended his indictment by modifying an essential element of armed robbery.

¶30. We first note that Brent did not object to this instruction at trial and raises this issue for the first time on appeal. We have held that a defendant's "failure to object to the jury instruction as constructively amending the indictment waives this issue on appeal." *Neal v. State*, 15 So. 3d 388, 397 (Miss. 2009) (citing *Rubenstein v. State*, 941 So. 2d 735, 774 (Miss. 2006)). "If no contemporaneous objection is made, the error, if any, is waived" and this Court's review is limited to plain error. *Robinson v. State*, 247 So. 3d 1212, 1226 (Miss. 2018) (internal quotation marks omitted) (quoting *Cole v. State*, 525 So. 2d 365, 369 (Miss. 1987)). We have also explained that "[n]ot all variances between the indictment and instructions constitute a constructive amendment, nor do they rise to plain error." *Bell v. State*, 725 So. 2d 836, 855 (Miss. 1998).

¶31. "To determine if plain error has occurred, we must determine if the trial court has deviated from a legal rule, whether the error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial." *Ambrose v. State*, 254 So. 3d 77, 111 (Miss. 2018)

12

(internal quotation marks omitted) (quoting *Armstead v. State*, 196 So. 3d 913, 916 (Miss. 2016)).  On appeal, this Court does not review jury instructions in isolation.  *Montgomery v. State*, 253 So. 3d 305, 316 (Miss. 2018).  Rather, the instructions must be read "as a whole to determine if the jury was properly instructed."  *Id.* (internal quotation marks omitted) (quoting *Rubenstein*, 941 So. 2d at 787).  No reversible error will be found when the jury instructions, viewed collectively, "fairly announce the law of the case and create no injustice . . . ."  *Id.* (citing *Harris v. State*, 861 So. 2d 1003, 1014 (Miss. 2003)).

¶32.   Count one of Brent's indictment charged him with armed robbery in violation of Section 97-3-79.  "The major purpose of an indictment is to furnish the accused such a description of the charges against him as will enable him to adequately prepare his defense."  *Neal*, 15 So. 3d at 397 (internal quotation marks omitted) (quoting *Williams v. State*, 445 So. 2d 798, 804 (Miss. 1984)).  "In contrast, the main 'purpose of jury instructions is to tell the jury what facts they have to find and who has the burden of proving or disproving those facts.'" *Id.*  (quoting *Harris*, 861 So. 2d at 1016).

¶33.   Jury instruction S–4 fairly and accurately reflects this Court's holding in *Dambrell*, in which this Court held that when "a defendant makes an overt act, a victim does not have to actually see a deadly weapon.  So long as the victim reasonably believes that the defendant had a deadly weapon and the defendant makes an overt act the statute is satisfied." *Dambrell*, 903 So. 2d at 689; *see also* *Williams v. State*, 134 So. 3d 732, 737–738 (Miss. 2014) (affirming an armed-robbery conviction after finding that a nearly identical jury instruction was proper based on *Dambrell*).

¶34. In this case, jury instruction S–4 did not modify an element of armed robbery under Section 97-3-79. Instead, instruction S–4 explained to the jury that Banks was not required to have testified that he saw Brent with a deadly weapon in order for the jury to convict. Moreover, the jury was also instructed on the essential elements of armed robbery found in Section 97-3-79. Specifically, jury instruction S–1 explained that before the jury could find Brent guilty of armed robbery, the State was required to prove beyond a reasonable doubt that Brent placed Banks "in fear of immediate injury to his person by the exhibition of a deadly weapon, to-wit: a handgun . . . ." Jury instruction S–1 also instructed the jury that if the State failed to prove any of the elements of armed robbery, then it had to find Brent not guilty.

¶35. Finally, jury instruction S–4 did not prejudice Brent or his defense. All defenses available to Brent under his indictment were equally available to him at trial. This argument lacks merit.

> IV. **Whether the State proved Brent's status as a violent habitual offender under Mississippi Code Section 99-19-83.**

¶36. Brent claims that the State failed to prove his status as a violent habitual offender beyond a reasonable doubt. We disagree.

¶37. First, Brent failed to object to the State's evidence of his habitual-offender status. Additionally, Brent did not object to the trial court's sentencing him as a violent habitual offender. Instead, Brent raises this argument for the first time on appeal. Thus, the State contends that Brent waived appellate review of this issue.

¶38. This Court has held that "[a] defendant's failure to object to habitual-offender

14

sentencing operates as a procedural bar to this issue on appeal." *Perry v. State*, 233 So. 3d 750, 760 (Miss. 2017) (citing *Cummings v. State*, 465 So. 2d 993, 995 (Miss. 1985)). But because "[a] defendant has a fundamental right of freedom from an illegal sentence[,]" such claims may be reviewed for plain error. *Conner v. State*, 138 So. 3d 143, 150–51 (Miss. 2014) (citing *Grayer v. State*, 120 So. 3d 964, 969 (Miss. 2013)). "To determine if plain error has occurred, this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether that error has prejudiced the outcome of the trial." *Swinney v. State*, 241 So. 3d 599, 606 (Miss. 2018) (internal quotation marks omitted) (quoting *Conner*, 138 So. 3d at 151).

¶39. In this case, Brent was indicted as a violent habitual offender under Section 99-19-83. "When the defendant is indicted as a habitual offender, '[a] jury is to decide the question of guilt and subsequently the circuit judge is to serve as the finder of fact in determining whether the habitual offender part of the indictment is established by the requisite degree of proof.'" *Conner*, 138 So. 3d at 151 (alteration in original) (quoting *Seely v. State*, 451 So. 2d 213, 215 (Miss. 1984)). To qualify as a violent habitual offender under Section 99-19-83, "the State must prove that a defendant has not only been at least twice previously convicted but that he has been sentenced to *and has served separate terms of one (1) year or more* in any state and/or federal penal institution." *Rice v. State*, 134 So. 3d 292, 296 (Miss. 2014) (internal quotation marks omitted) (quoting *Bogard v. State*, 624 So. 2d 1313, 1320 (Miss. 1993)). But Section 99-19-83 "does not require that the terms served must have an intervening period between them when the defendant is free of confinement." *Jackson v.*

15

*State*, 483 So. 2d 1353, 1357 (Miss. 1986).

¶40.    Brent contends that the State failed to prove all the essential elements of Section 99-19-83.  Brent concedes that the State's evidence proved he had two previous convictions for crimes of violence.  Brent, however, argues that the evidence was insufficient to prove that he actually served separate sentences of one year or more on each of his previous armed-robbery convictions.

¶41.    "When reviewing the sufficiency of the evidence, we ask 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of [Section 99-19-83] beyond a reasonable doubt.'" *Martin v. State*, 214 So. 3d 217, 222 (Miss. 2017) (quoting *Bush*, 895 So. 2d at 843).

> [I]f a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient.

*Shelton v. State*, 214 So. 3d 250, 256 (Miss. 2017) (quoting *Bush*, 895 So. 2d at 843).

¶42.    In this case, the trial court held a separate sentencing hearing on December 17, 2018.  During that hearing, the State called Mississippi Department of Corrections (MDOC) regional director Marlow Stewart to testify to Brent's incarceration history.  Stewart testified that Brent was originally booked into MDOC in 2003 under two separate cause numbers—2002-0371 and 2002-0372—for separate armed robberies and that Brent was not released until 2014.[4]  Stewart testified that the total time that Brent was incarcerated—eleven

---

[4] We note that Stewart's testimony regarding the length of time that Brent served in the custody of MDOC was not clear at times.  But the trial judge (the finder of fact)

years—coincided with the combined total of Brent's sentences following his 2003 armed-robbery convictions.

¶43. The State also placed into evidence certified copies of Brent's two prior armed-robbery convictions and subsequent sentences. These certified copies showed that Brent received two separate armed-robbery convictions in 2003, that Brent was sentenced to serve five years in MDOC custody followed by ten years of post-release supervision in cause number 2202-0371 and that Brent was sentenced to serve six years in MDOC custody followed by nine years of post-release supervision in cause number 2002-0372. Those sentences were ordered to run consecutively, with the total combined sentence of incarceration being eleven years—five years of incarceration under 2002-0371 followed by six years of incarceration under 2002-0372.

¶44. We also note that Brent would not have been eligible for parole under Mississippi Code Section 47-7-3(d)(ii) (Supp. 2002), which was in effect at the time Brent was sentenced in 2003 on the armed-robbery convictions. Specifically, subsection (d)(ii) provided in pertinent part that "[n]o person shall be eligible for parole who shall, on or after October 1, 1994, be convicted of robbery . . . through the display of a firearm . . . [or] . . . a deadly weapon." Miss. Code Ann. § 47-7-3(d)(ii) (Supp. 2002). Thus, Brent should have been required to serve a total of eleven years without the possibility of parole or early release. This mandatory eleven years coincides exactly with Stewart's testimony that Brent was

---

ultimately found that Stewart's testimony and the State's certified copies of Brent's previous armed-robbery convictions and subsequent sentences were sufficient to prove Brent's status as a violent habitual offender under Section 99-19-83.

booked into MDOC in 2003 and was not released until eleven years later in 2014.

¶45.   After reviewing the record in the light most favorable to the prosecution, we find that the State presented sufficient evidence for the trial judge to find that Brent had previously served one year or more on each of his previous armed-robbery convictions.  Thus, we discern no error, much less plain error.

### V.   Whether the record contains any other arguable issues.

¶46.   "As part of the *Lindsey* procedure, this Court must determine, based on a review of the record and any pro se brief filed, whether any arguable issue exists."  *Thomas v. State*, 247 So. 3d 1252, 1258 (Miss. 2018) (citing *Lindsey*, 939 So. 2d at 748).  After carefully and thoroughly reviewing the record, we find that no arguable issues exist warranting further appellate review.

### CONCLUSION

¶47.   Brent presents no arguable issues in his pro se brief, and we find no other arguable issues after carefully reviewing the record.  Accordingly, we affirm Brent's armed-robbery and kidnapping convictions and Brent's sentence as a Section 99-19-83 violent habitual offender.

¶48.   **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.**

18