# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00854-COA

**MALCOLM K. PATRICK A/K/A MALCOLM KENDREL PATRICK A/K/A MALCOLM PATRICK**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                                        APPELLEE

DATE OF JUDGMENT:                 06/15/2017
TRIAL JUDGE:                      HON. CHRISTOPHER A. COLLINS
COURT FROM WHICH APPEALED:        SCOTT COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:           OFFICE OF STATE PUBLIC DEFENDER
                                  BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE:            OFFICE OF THE ATTORNEY GENERAL
                                  BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:                MARK SHELDON DUNCAN
NATURE OF THE CASE:               CRIMINAL - FELONY
DISPOSITION:                      REVERSED AND RENDERED - 06/26/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., WILSON AND TINDELL, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Malcolm Patrick appeals the judgment of the Scott County Circuit Court adjudicating him guilty of receiving stolen property and sentencing him to ten years, with two years suspended, in the custody of the Mississippi Department of Corrections (MDOC). In this appeal, Patrick argues: his sentence is excessive; the trial court erred by granting a certain jury instruction; his due process rights were violated because he was forced to wear jail attire during his trial; and the State failed to present sufficient evidence to sustain the verdict.

¶2.    Because we find the evidence insufficient to sustain the verdict, we reverse and render Patrick's conviction and sentence.  Therefore, we do not address Patrick's other arguments, except for a limited discussion of the legality of his sentence.

FACTS

¶3.    On October 28, 2015, Vickie Stroud contacted the Scott County Sheriff's Department and reported that her son, Perry Stroud's Honda Foreman 4x4 four-wheeler had been stolen. The Scott County Sheriff's Department conducted an investigation and listed the four-wheeler as stolen on the National Crime Information Center (NCIC) registry.  Officers canvassed the area searching for information and for the stolen property.  Investigator Donald Simpson led the investigation and testified that the day after the four-wheeler was reported stolen, he received information that it had been spotted.  Shortly after, a concerned citizen, Willie Wilson, informed law enforcement officers that he had seen Patrick riding the four-wheeler and could arrange to purchase it.  According to the State, Wilson received nothing in exchange for his agreement to work with investigators.  He testified that he agreed to participate because he wanted to do the right thing.

¶4.    Wilson called Patrick, who offered to sell Wilson the four-wheeler for $750.  Vickie testified that she purchased the four-wheeler in December 2006, for $6,500, and that she thought the vehicle was worth between $1,000 and $5,000, but later testified that it was worth at least $3,500 at the time it was stolen.  Vickie's son, Perry, testified that he thought the vehicle was worth approximately $4,200 at the time it was stolen.

¶5.    Investigator Simpson contacted Brad Ellis, the sheriff's department's lead narcotics

2

investigator, and asked him to facilitate the controlled buy. Investigator Ellis arranged for Wilson to meet him at the sheriff's department, where he provided the recording equipment and the official state funds to purchase the four-wheeler. Wilson then met with Patrick and purchased the four-wheeler and a trailer that he used to transport it. The entire transaction was captured via both audio and video using the recording equipment provided by the sheriff's department. As agreed, Wilson purchased the four-wheeler and the trailer for a total of $750.

¶6. Patrick was indicted on March 27, 2017, for receiving stolen property. On June 7, 2017, a jury found Patrick guilty of receiving stolen property. The circuit court sentenced him to ten years, with two years suspended and eight years to serve, in the custody of the MDOC. On June 16, 2017, Patrick filed a motion for a new trial, challenging, among other things, the weight and sufficiency of the evidence. Following the denial of that motion, Patrick now appeals.

## DISCUSSION

*I.     Excessive Sentence*

¶7. According to Mississippi Code Annotated section 97-17-70(4), the maximum sentence for receiving stolen property valued at less than $5,000 is five years. Miss. Code Ann. § 97-17-70(4) (Rev. 2014). However, as stated, the circuit court sentenced him to ten years.

¶8. The State concedes, and we agree, that Patrick received an erroneous sentence, because the maximum allowable sentence for his offense was five years. However, since we are reversing and rendering Patrick's conviction and sentence on another ground, it is not

necessary that we correct the illegal sentence.

## II. Sufficiency of the Evidence

¶9.    The State presented evidence to show that Patrick was in possession of the stolen four-wheeler around the time that it was stolen and that he sold it for a price that was, arguably, below its market value. The four-wheeler was stolen on October 28, 2015, and Patrick sold it on November 6, 2015, for $750. As noted, the owner bought the four-wheeler in December 2006 for $6,500 and testified that in October of 2015, almost nine years later, she would not have accepted any amount less than $3,500. She reiterated that she had been offered that amount but chose not to sell it. However, the record is not clear as to the date that amount was offered. In a leading question, the owner finally affirmed that she believed the four-wheeler was worth $3,500 in October 2015. Also, as previously stated, the owner's son testified that he thought the four-wheeler was worth $4,200. No additional evidence was offered as to the value of the nearly nine-year-old vehicle.

¶10.    The State contends that the evidence is sufficient to sustain Patrick's conviction. It points to the timing of his possession of the four-wheeler, coupled with the fact that he sold it at a price well below market value, to argue that he knew the property was stolen, and the jury was entitled to conclude that Patrick was guilty of receiving stolen property.

¶11.    Patrick responds that the State did not carry its burden, as it did not prove beyond a reasonable doubt that he knew the property was stolen as required by statute:

> A person commits the crime of receiving stolen property if he intentionally possesses, receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is possessed, received, retained or disposed of with intent to

4

restore it to the owner.

Miss. Code Ann. § 97-17-70(1) (Rev. 2014). "A disparity between the value of the property in question and the price at which the defendant subsequently sells it may be evidence of guilty knowledge when coupled with the possession of the burglary tools adapted for breaking and entering and burglarizing." *Whatley v. State*, 490 So. 2d 1220, 1222 (Miss. 1986). The defendant's "actions subsequent to receipt may have a bearing on whether he knew or should have known the property to be stolen." *Id.* Patrick argues that "a sale for $750 . . . is not out of line with [the owner's] valuation. [The] sale price, aside from not being grossly disparate to the value, could just as easily prove Patrick simply needed some cash in a hurry." "Guilty knowledge is the gist of the offense of receiving stolen property. Guilty knowledge may be shown by evidence that the defendant received the property under circumstances that would lead a reasonable man to believe it to be stolen." *Whatley*, 490 So. 2d at 1222.

¶12.    The facts in *Whatley* are strikingly similar to our facts:

> On August 30, 1984, employees from the Tennessee Gas Pipeline Corporation reported that a generator, worth about $350.00 to $400.00[,] had been stolen from the back of their truck in the parking lot of the Holiday Inn in Greenville, Mississippi. The record is bare of evidence regarding the identity of the actual thief or thieves. At about 1:00 a.m. on the morning of August 31, 1984, an employee of the Holiday Inn, Ronald Kilgore, offered to sell a portable generator to Charles Willmer, who was an off-duty policeman working as a security guard for the hotel. Willmer decided not to buy the generator; however, on the following day at work he saw the larceny report on a generator which was stolen. It fit the description of the generator which Kilgore had offered to sell him. He reported this information to Sgt. Criswell of the Greenville Police. Criswell conducted an investigation, which ultimately led to the recovery of the generator on September 7, 1984, and the arrest of the defendant, Perry Whatley.

5

According to testimony from Charles Rochelle, who testified as a state's witness, Perry Whatley appeared in Rochelle's bar in Greenville on the night of August 30, 1984, at about 10:30 to 11:30 p.m. Whatley told Rochelle that he had a power plant that he wanted to pawn to him, and he assured Rochelle that the generator belonged to him. Rochelle testified that he told Whatley that he wanted a bill of sale executed for the generator, and that if Whatley did not return to pick it up the next day he would sell it. Whatley agreed to sign the bill of sale for the generator. According to Rochelle, [h]e more or less pawned it to me, but I took a bill of sale on it in case he didn't come back.

When Whatley did not return for the generator within a couple of days, Rochelle asked Kilgore to help him sell it. When Kilgore was unsuccessful, Rochelle finally located a buyer, Charles Prestridge. Rochelle sold the generator to Prestridge for $100.00; however[,] after he was contacted by the police, he gave Prestridge his money back, and recovered the generator.

*Id*. at 1221.

¶13.   In reversing Whatley's conviction, the Mississippi Supreme Court stated:

The state's evidence, taken in the light most favorable to it at the close of the state's case, merely established possession of property recently stolen, which was worth more than $100.00, and which was sold, or pawned, by the defendant for $20.00. That evidence was insufficient to show guilty knowledge. Furthermore, the state presented no evidence at trial bearing on the defendant's receipt of the goods, and the defendant's version of receipt of the goods was apparently rejected by the jury.

The state failed to present evidence sufficient to withstand the defendant's motion for a directed verdict on the charge of receiving stolen property.

*Id*. at 1224.

¶14.   Patrick contends that the State presented no evidence as to how he came into possession of the four-wheeler. "Unexplained possession of recently stolen property, standing alone, is insufficient to satisfy the guilty knowledge required as an element for the crime of receiving stolen property." *McClain v. State*, 625 So. 2d 774, 779 (Miss. 1993).

6

We agree, based on *Whatley*, that the evidence is insufficient to show that Patrick knew that the four-wheeler had been stolen; therefore, we find that the State failed to prove beyond a reasonable doubt that Patrick was guilty of receiving stolen property. We reverse and render the judgment of the Scott County Circuit Court finding Patrick guilty of receiving stolen property, and the accompanying sentence.

¶15. **REVERSED AND RENDERED.**

**GRIFFIS, P.J., BARNES, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J.**

**CARLTON, J., DISSENTING:**

¶16. I respectfully dissent. I would affirm the conviction, finding that the record contains sufficient evidence to support the jury verdict and conviction.[1] I would, however, remand for resentencing because I agree that the sentence imposed exceeds the statutory maximum.

**LEE, C.J., JOINS THIS OPINION.**

---

[1] *See Johnson v. State*, 235 So. 3d 1404, 1410 (¶12) (Miss. 2017) (In reviewing a challenge to the sufficiency of the evidence we determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . The State is given the benefit of all reasonable inferences that may be drawn from the evidence." (internal quotation marks and citations omitted)).