# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00818-COA

**RICKEY WALTON A/K/A RICKIE WALTON**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

DATE OF JUDGMENT:           06/20/2024
TRIAL JUDGE:                HON. CHARLES E. WEBSTER
COURT FROM WHICH APPEALED:  QUITMAN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     OFFICE OF STATE PUBLIC DEFENDER
                            BY: AMBER LAUREN STEWART
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: ALLISON ELIZABETH HORNE
DISTRICT ATTORNEY:          BRENDA FAY MITCHELL
NATURE OF THE CASE:         CRIMINAL - FELONY
DISPOSITION:                AFFIRMED - 09/30/2025
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., LAWRENCE AND WEDDLE, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. Rickey Walton appeals his conviction of felony possession of stolen property in the Quitman County Circuit Court. On appeal, Walton argues: (1) the evidence at trial was insufficient to prove that Walton possessed the requisite guilty knowledge necessary under Mississippi Code Annotated section 97-17-70 (Rev. 2020) to uphold a conviction of possession of stolen property; (2) the trial court erred in denying Walton's motion for a directed verdict and in refusing Walton's peremptory instruction because the State failed to prove the element of guilty knowledge; and (3) the verdict was against the overwhelming weight of the evidence.

¶2.     After our review, we find no error. We therefore affirm Walton's conviction and sentence.

## FACTS

¶3.     On February 8, 2023, Officer Ambershaye Hale of the Quitman County Sheriff's Department received a report from Chandler Crawford that his camouflage 2019 Can-Am Defender side-by-side ATV ("side-by-side") was missing from a hunting camp in Quitman County, Mississippi. Crawford reported that he went to the hunting camp to collect his property and discovered that the side-by-side was missing. Crawford provided Officer Hale with the side-by-side's vehicle identification number (VIN), which Officer Hale gave to Detective Darryl Linzy of the Quitman County Sheriff's Department to investigate.

¶4.     Crawford again contacted the Quitman County Sheriff's Department on February 11, reporting that he had seen a vehicle matching the side-by-side's description in the backyard of a home on Chestnut Street in Quitman County. Officer Hale, Detective Linzy, and Chief Marvin Furr, chief of police in Marks, Mississippi, responded to the location, along with Crawford.

¶5.     Detective Linzy knocked on the door of the home, and Walton answered. Walton allowed the officers and Crawford to enter his property to view the side-by-side. The side-by-side's VIN number and coloring confirmed it was the one Crawford owned. Officers then took Walton into custody.

¶6.     During the investigation, officers retrieved text message exchanges between Walton's cell phone and one of the State's witnesses, Keith Jenkins. The messages suggested that the

2

person texting from Walton's phone was attempting to sell the side-by-side for $3,500.00, well below its current market value of $19,000.00. Walton was eventually indicted for one count of receiving stolen property pursuant to section 97-17-70.

¶7.    At Walton's trial, the jury heard testimony from Officer Hale, Crawford, Jenkins, Detective Linzy, forensic analyst Greg Horton, and Walton. Detective Linzy testified that when Walton was in custody, he gave a statement and admitted to attempting to sell the side-by-side. However, during trial, Walton testified that he did not attempt to sell the side-by-side. Instead, he claimed someone named Chris used Walton's phone to try to sell the side-by-side. Walton also maintained that while he was aware that the side-by-side was on his property, he was not the person who put it there.

¶8.    At the close of the State's case-in-chief, the defense moved for a directed verdict, arguing that the State had not met its burden of proving a prima facie case of possession of stolen property. Defense counsel specifically argued that the State had not provided any evidence to show that Walton knew or should have known that the side-by-side was stolen. The trial court denied the motion after finding that the State had presented sufficient evidence to submit the case to the jury.

¶9.    The jury ultimately found Walton guilty of possession of stolen property, and the trial court sentenced Walton to serve ten years in the custody of the Mississippi Department of Corrections (MDOC). Walton's trial counsel moved for a judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial, which the trial court denied. This appeal followed.

# DISCUSSION

## I. Sufficiency of the Evidence

¶10. Walton first argues that the State failed to present sufficient evidence to prove beyond a reasonable doubt that Walton possessed the requisite guilty knowledge necessary to uphold a conviction for possession of stolen property. Walton submits that because the State failed to prove an essential element of the crime (guilty knowledge), the trial court erred in denying Walton's motion for a directed verdict and in refusing Walton's peremptory instruction.

¶11. This Court reviews challenges to the sufficiency of the evidence under a de novo standard. *Simmons v. State*, 387 So. 3d 1036, 1042-43 (¶23) (Miss. Ct. App. 2024). When reviewing a challenge to the sufficiency of the evidence, we must "consider[] whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Garrett v. State*, 344 So. 3d 849, 851 (¶12) (Miss. 2022) (internal quotation mark omitted). In so doing, "[w]e view all of the evidence in the light most favorable to the prosecution, accept all the evidence supporting the verdict as true, and give the prosecution the benefit of all favorable inferences that reasonably may be drawn from the evidence." *Id*. "We will reverse and render if the facts and inferences favor the defendant with such force that reasonable jurors could not find him guilty beyond a reasonable doubt." *Simmons*, 387 So. 3d at 1043 (¶23). However, we "must affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*.

¶12. Walton was convicted under section 97-17-70, which states, in relevant part:

> A person commits the crime of receiving stolen property if he intentionally possesses, receives, retains or disposes of stolen property *knowing that it has*

4

*been stolen or having reasonable grounds to believe it has been stolen*, unless the property is possessed, received, retained or disposed of with intent to restore it to the owner.

Miss. Code Ann. § 97-17-70(1) (emphasis added). The Mississippi Supreme Court has explained that "[g]uilty knowledge is the gist of the offense of receiving stolen property. Guilty knowledge may be shown by evidence that the defendant received the property under circumstances that would lead a reasonable man to believe it to be stolen." *Whatley v. State*, 490 So. 2d 1220, 1222 (Miss. 1986) (citations and internal quotation marks omitted). "Guilty knowledge may be proved by direct evidence [or] . . . by any surrounding facts or circumstances from which knowledge may be inferred." *Kelly v. State*, 124 So. 3d 717, 720 (¶6) (Miss. Ct. App. 2013); *see also Ratcliff v. State*, 396 So. 3d 1101, 1105 (¶5) (Miss. 2024) (citing *Barton v. State*, 303 So. 3d 698, 703 (¶18) (Miss. 2020); *Johnson v. State*, 224 So. 3d 66, 68 (¶5) (Miss. 2016)), *rev'g*, 404 So. 3d 1180 (Miss. Ct. App. 2023). "In both direct and circumstantial cases, the jury is empowered to weigh, and resolve conflicts in, the evidence." *Dees v. State*, 126 So. 3d 21, 26 (¶19) (Miss. 2013).

¶13. Here, the State maintains that the evidence at trial showed that Walton received the side-by-side under circumstances that would lead a reasonable person to believe it was stolen. The evidence showed that the side-by-side was stolen—at most—six days before it was found on Walton's property. The State maintains that "unexplained possession of *recently* stolen property is prima facie, although by no means conclusive, evidence of the guilt of the defendant." *Weaver v. State*, 481 So. 2d 832, 834 (Miss. 1985) (emphasis added). Additionally, Detective Linzy testified that when Walton was in custody, he admitted to

5

Detective Linzy that he attempted to sell the side-by-side. The text messages recovered from Walton's phone were sent from someone who identified himself as "Rick" (Walton's first name is Rickey), and he wanted "no heat" on the sale of the side-by-side and wanted to sell it only to someone he could "trust." Further, the State offered testimony by Crawford detailing the damages to the side-by-side, including that the ignition harness had been cut and hot-wired. The State argues that based on this evidence, a jury could reasonably infer Walton's guilty knowledge.

¶14. Our appellate courts have held that where circumstances would lead a reasonable person to believe the property to be stolen by another, and the property is traced to the possession of the defendant, it may be sufficient to constitute constructive knowledge of the stolen nature of the property. *Bennett v. State*, 211 So. 2d 520, 526 (Miss. 1968); *Francis v. State*, 150 Miss. 176, 122 So. 372, 373 (1929). However, "[u]nexplained possession of recently stolen property, standing alone, is insufficient to satisfy the guilty knowledge required as an element for the crime of receiving stolen property." *Patrick v. State*, 269 So. 3d 460, 464 (¶14) (Miss. Ct. App. 2018). This point has been reiterated in *Ratcliff* and *Barton*, where the supreme court held that, standing alone, the mere fact that the property was stolen recently before the defendant's arrest is insufficient to prove beyond a reasonable doubt that the defendant knew that the property was stolen. *Ratcliff v. State*, 396 So. 3d at 1107 n.1 (quoting *Ratcliff,* 404 So. 3d 1180, 1187 (¶38) (Miss. Ct. App. 2023) (Wilson, J., dissenting)); *see Barton*, 303 So. 3d at 702-03 (¶¶16-19).

¶15. In *Ratcliff,* the defendant was convicted of possession of a stolen firearm. *Id*. at 1103

6

(¶1).[1]  The defendant denied knowledge of or involvement with the stolen revolver, which was found in a bag that he admitted belonged to him.  *Id*. at 1103 (¶2).  However, the defendant testified that his bag was not in his possession but, rather, in the trunk of a car that others accessed outside the defendant's observation.  *Id*. at 1104 (¶2).  The supreme court explained that

> when the evidence in a possession-of-stolen-property case in which guilty knowledge is the main disputed element and when equal credence must be given to two theories of a case, one in which the defendant is guilty and another in which the defendant is innocent, a conviction cannot be sustained beyond a reasonable doubt.

*Id*. at 1106 (¶9).  The supreme court clarified that in the absence of incriminating evidence as to how the defendant came into the possession of stolen property, "the State must present something in addition to the unexplained possession of recently stolen property."  *Id*. at 1107 (¶12).

¶16.    Here, the record contains little evidence as to how Walton came into possession of the stolen property.  In his statement to police officers and at trial, Walton stated that when he arrived home one night, he discovered the side-by-side parked in his yard.  At trial, Walton testified that two people—Timmy White and Jessica Kemp—parked the side-by-side in his yard and told Walton that they would return later to retrieve it.

¶17.    The supreme court has held that the defendant's "actions subsequent to receipt may have a bearing on whether he knew or should have known the property to be stolen."

---

[1] The supreme court has held that the analysis for possession of a stolen firearm is analogous to possession of stolen property.  *Id*. at 1105 (¶5); *see also Barton*, 303 So. 3d at 701 (¶14).

7

*Whatley*, 490 So. 2d at 1222. Here, the State presented evidence of Walton's actions *after* he became aware of the side-by-side on his property. Text messages admittedly sent from Walton's phone number to Jenkins showed that the person texting from Walton's phone attempted to sell the side-by-side for a price much lower than its value. At the time, the side-by-side was valued at $19,000, yet the person texting from Walton's phone tried to sell the side-by-side for $3,500. The attempted sale occurred on Friday afternoon, less than a day after Walton claimed that the side-by-side had appeared on his property. Detective Linzy testified that Walton admitted to negotiating the sale for a third party named "Chris"; however, at trial, Walton denied sending the messages and testified that Chris sent the texts from Walton's phone. Regardless of who sent the messages, the State presented evidence showing that the person sending the messages identified themselves as "Rick" in the texts. As stated, Walton's first name is Rickey.

¶18. In *Whatley*, the supreme court held that "the immediate sale of the [stolen property] at such a low price could indicate guilty knowledge." *Whatley*, 490 So. 2d at 1223. The supreme court added that such a sale could also indicate an immediate need for cash or that the defendant was guilty of the actual theft.[2] *Id*. On appeal, Walton acknowledges that his attempted sale of the side-by-side could have indicated guilty knowledge, but he argues that the State did not prove this to the exclusion of every reasonable hypothesis of Walton's

___

[2] The *Whatley* decision relied on early supreme court caselaw stating that "a thief cannot be convicted under the statute for receiving stolen property." *Id*. at 1223 (quoting *Frank v. State*, 67 Miss. 125, 6 So. 842 (1889)). We recognize that current law now provides that "a person who has stolen property may now be charged with either receiving or stealing the property, but not both." *Elliott v. State*, 61 So. 3d 950, 958 (¶27) (Miss. Ct. App. 2011) (citing Miss. Code Ann. § 97-17-70(3)(a)).

innocence. Rather, Walton maintains the attempted sale of the side-by-side "could have indicated that Walton had an immediate need for cash or that he took part in the theft of the side-by-side." Walton cites *Whatley* for his assertion that the State failed to disprove these potential theories.

¶19. In the present case, we find that alternative theories for Walton's involvement with the side-by-side are inapplicable on appeal because the jury was not presented with these arguments. At trial, Walton's testimony and his counsel's closing argument centered around Walton's lack of involvement with the side-by-side to any degree, thereby negating an argument that Walton was selling it for quick cash.

¶20. After viewing the evidence in the light most favorable to the State and giving the State the benefit of all reasonably drawn inferences, we find that a rational juror could have found beyond a reasonable doubt that Walton possessed the guilty knowledge required under section 97-17-70. It is undisputed that the side-by-side was found on Walton's property. The State presented testimony regarding the appearance and state of the side-by-side as it sat on Walton's property. The testimony showed that the side-by-side had been altered and hot-wired, thereby allowing the jury to infer the stolen nature of the side-by-side. The State also raised questions regarding whether Walton knew the side-by-side was stolen when attempting to quickly sell it, especially for a price lower than its current value. The jury could also weigh the conflicting testimony whether Walton or "Chris" sent the messages from Walton's phone. "The jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining

9

whose testimony should be believed." *Reindollar v. State*, 296 So. 3d 739, 744 (¶20) (Miss. Ct. App. 2020).

¶21. After our review, we find that the State presented sufficient evidence for a rational jury to convict Walton of receiving stolen property. Accordingly, the trial court did not err by denying Walton's motion for a directed verdict during trial or his post-trial motion for JNOV, and the court likewise did not err in refusing Walton's request for a peremptory instruction on this issue.

## II. Weight of the Evidence

¶22. Walton alternatively argues that the verdict was contrary to the weight of the evidence. Walton claims the overwhelming weight of the evidence at trial established only that the side-by-side was stolen and then found on Walton's property and that Walton attempted to sell the side-by-side.

¶23. When considering a challenge to the weight of the evidence, this Court's role "is to review the trial court's decision to grant or deny a new trial for an abuse of discretion." *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017). We weigh the evidence "in the light most favorable to the verdict," only disturbing a verdict when it is "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id*. at 289 (¶1). "[T]he jury is the sole judge of the weight of the evidence and the credibility of the witnesses, and conflicts in the evidence are for the jury to resolve." *Boyd v. State*, 383 So. 3d 1280, 1290 (¶47) (Miss. Ct. App. 2024) (internal quotation mark omitted). However, this Court "has recognized that even when the evidence

10

is sufficient to support a conviction, a defendant may be entitled to a new trial if the trial court determines that the guilty verdict returned by the jury was against the [overwhelming] weight of the more credible evidence presented at trial." *Brown v. State*, 407 So. 3d 239, 256 (¶70) (Miss. Ct. App. 2024) (internal quotation mark omitted).

¶24.    As discussed, the State presented evidence that the side-by-side was stolen and that it was found on Walton's property. While the transcript contains conflicting testimony regarding whether Walton was involved with the attempted sale, we recognize that the jury is tasked with resolving such conflicts. After viewing the evidence in this case in the light most favorable to the verdict, we find that the verdict is not contrary to the overwhelming weight of the evidence. *See Russell v. State*, 844 So. 2d 506, 509 (¶10) (Miss. Ct. App. 2003) ("Taking the evidence in a light favorable to the verdict, we find the jurors reasonably inferred that [the defendant]'s having the stolen property in his personal automobile, his selling it far below market price, and the secretive way in which he secured a buyer cumulatively provided the jurors reason to find [the defendant] had guilty knowledge sufficient to support guilt."). We cannot say that allowing the verdict to stand would constitute an unconscionable injustice, and we find that the trial court did not abuse its discretion in denying Walton's motion for a new trial.

**CONCLUSION**

¶25.    After viewing the evidence in the light most favorable to the prosecution, accepting all the evidence supporting the prosecution as true, and giving the prosecution the benefit of all favorable inferences that reasonably may be drawn from the evidence, we find that a

11

reasonable jury could have found that the State proved beyond a reasonable doubt that Walton possessed the stolen side-by-side and that he knew or had reasonable grounds to know that the side-by-side was stolen. We also find, when viewing the evidence in the light most favorable to the verdict, that the jury's verdict was not contrary to the overwhelming weight of the evidence. We therefore affirm Walton's conviction and sentence.

¶26. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**